IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFF D., ERIKA D., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.W., *Appellee*s.

No. 1 CA-JV 15-0130
FILED 2-16-2016

Appeal from the Superior Court in Maricopa County
No. JD510766
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen, PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellants*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee DCS*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge John C. Gemmill joined.

**J O H N S E N**, Judge:

**¶1**        This appeal presents questions relating to the change of physical custody of a child in the legal custody of the State from a foster family that wanted to adopt her to the child's great aunt and uncle, who also wanted to adopt her. We hold the superior court did not violate the foster family's due-process rights and did not abuse its discretion by granting the change.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The Department of Child Safety ("DCS") filed a dependency petition in January 2013 alleging neglect by the parents of a one-year-old child ("Child").[1]  At a permanency hearing in October 2014, the superior court changed the case plan to severance and adoption. On January 7, 2015, after two years in a different foster home, Child was placed with Jeff D. and Erika D. ("Foster Parents") as a potential adoptive placement.

**¶3**        Five weeks later, Lane S. and Sherry S., Child's great aunt and uncle ("Great Aunt and Uncle"), moved to intervene and sought physical custody of Child, saying they wanted to adopt her if her parents' rights were terminated. Great Aunt and Uncle live in Wisconsin and filed a report pursuant to the Interstate Compact on the Placement of Children supporting their request for custody. Child's mother and DCS supported placement with Great Aunt and Uncle, and DCS moved to have Child transferred to them. The court set oral argument on the motion to intervene and the motion to change custody. In the meantime, Foster Parents moved to intervene and filed an objection to DCS's motion to change custody. Foster Parents also submitted reports for the court's consideration and filed a list of witnesses and exhibits.

**¶4**        On April 10, 2015, the court heard argument from Child's guardian ad litem, DCS, the birth parents, Great Aunt and Uncle and Foster Parents. The court granted both motions to intervene, then found that placement with Great Aunt and Uncle would be in Child's best interests. The court first noted that it had considered all of the information presented, as well as Arizona Revised Statutes ("A.R.S.") section 8-514(B) (2016), which

---

[1]        Pursuant to S.B. 1001, Section 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

establishes a statutory preference for "kinship" placements, including placement with "another member of the child's extended family[.]"[2] The court then found that although each proposed placement could provide Child a loving, safe and stable home, the statutory preference weighed in favor of placement with Great Aunt and Uncle:

> The Court finds that the statutory preferences are there for a reason, to give guidance to the Court in terms of placement preferences and in this case the Court finds that the placement preference would be with the biological relatives of the mother and that's [Great Aunt and Uncle].

**¶5**        Foster Parents timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8–235(A) (2016), 12-2101(A)(1) (2016) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

### A.        Foster Parents' Due-Process Rights.

**¶6**        Foster Parents first argue the superior court violated their due-process rights when it did not allow them to present testimony at the hearing.  Whether the superior court afforded Foster Parents due process is a question of law subject to *de novo* review.  *See Herman v. City of Tucson*, 197 Ariz. 430, 432, ¶ 5 (App. 1999).

**¶7**        "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness."  *State v. Melendez*, 172 Ariz. 68, 71 (1992).  Due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). It also is "flexible and calls for such procedural protections as the particular situation demands."  *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

**¶8**        When the State seeks to remove children from the custody of *birth parents*, the parents' fundamental liberty interest in raising their children requires certain procedural protections.  *See Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) ("When the State moves to destroy weakened familial bonds, it must provide parents with fundamentally fair

---

[2]        Absent material revision after the relevant date, we cite a statute's current version.

procedures."); *Maricopa County Juv. Action No. JS-7499*, 163 Ariz. 153, 158 (App. 1989) ("It is well settled that the fundamental liberty interest in the care, custody, and control of one's children may not be changed by the state without due process of law."). But a challenge by *foster parents* to a dependent child's placement does not implicate the same fundamental liberty interests. Even though Foster Parents were committed to adopting Child, no authority suggests that their due-process rights were equivalent to those of birth parents whose rights are the subject of dependency or termination proceedings.

¶9 By statute, foster parents who intend to seek adoption of a child are entitled to notice and a hearing under circumstances such as those presented in this case:

> If the court determines that termination of parental rights or permanent guardianship is clearly in the best interests of the child and the child has been placed in a prospective permanent placement . . . any action that is inconsistent with the case plan of severance and adoption, including removal of the child from that placement, may occur only by court order . . . . If a motion to change the case plan or for removal of a child is filed, a copy of the motion must be provided to the prospective permanent placement at least fifteen days before a hearing on the motion. . . . The prospective permanent placement has the right to be heard in the proceeding.

A.R.S. § 8-862(H) (2016); *see also* Ariz. R. P. Juv. Ct. 37(B) (foster parents are "participants" in a severance or dependency, entitled to notification "of all applicable proceedings, as required by law" or court order).

¶10 Citing § 8-862(H), Foster Parents argue they had fewer than 15 days' notice of the hearing on the DCS motion to transfer, but they did not raise this objection in the superior court and they do not explain on appeal how they might have been prejudiced by inadequate notice. If parties do not raise purported procedural errors in the superior court, they may forfeit the right to raise them on appeal. *See In re Marriage of Dorman*, 198 Ariz. 298, 302-03, ¶ 11 (App. 2000). Further, nothing in the record suggests Foster Parents did not have adequate time to prepare and present their case. *See Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

¶11　　Foster Parents further argue the superior court violated their due-process rights when it set an evidentiary hearing but then would not allow them to present evidence and cross-examine witnesses. In fact, the court had not set the matter for an evidentiary hearing; its minute entry designated the proceeding as an "Oral Argument regarding the Motion to Intervene and possible change of physical custody[.]" Nevertheless, before the hearing, Foster Parents filed two bonding assessments, one by an adoption specialist and another by a psychologist, and a report by Child's behavioral therapist. The authors of the reports were present at the hearing.

¶12　　At the outset of the hearing, after granting both motions to intervene, the court solicited comments from Child's guardian ad litem, who observed that Child had bonded with Foster Parents but declined to take a position about custody, saying both possible placements were "absolutely fantastic families that will take care of [Child] for the rest of her life[.]" Expressing concern that continued uncertainty was not in Child's best interests, however, the guardian ad litem urged the court to decide the placement issue without delay.

¶13　　The court then noted that Foster Parents wanted to present testimony by the authors of the reports they had submitted. Great Aunt and Uncle had not submitted any reports but brought photographs of them visiting with Child. They objected to allowing Foster Parents' witnesses to testify, arguing the court had not let the parties know in advance that it would take evidence. The court acknowledged it had not set the matter for an evidentiary hearing, but stated that to avoid delay it would consider the photographs and Foster Parents' "pleadings," along with argument by both sides. Following argument, the court allowed a case worker from the foster adoption agency who worked with Foster Parents to speak.

¶14　　On this record, and in the absence of any indication that Foster Parents' witnesses would have provided additional relevant evidence beyond that contained in their reports, Foster Parents' right to be heard pursuant to § 8-862(H) was satisfied. The superior court allowed Foster Parents to intervene on the placement issue and considered the written reports they submitted and argument by their counsel.

¶15　　Citing *Volk v. Brame*, 235 Ariz. 462 (App. 2014), however, Foster Parents argue due-process principles required the superior court to allow them to call the authors of the reports to testify about Child's

placement. The issue in *Volk* was the validity of financial statements the parties offered to decide child support. *Id.* at 464, ¶ 3, 465, ¶ 9. The court did not allow the father time to to speak about the mother's evidence and "repeatedly interrupted Father's attempts to explain his view of the submitted exhibits[.]" *Id.* at 465, ¶ 9. Under those circumstances, we held that if parties proffer testimony about a disputed issue that requires a credibility determination, the court may not rely solely on avowals of counsel and oral argument, but must allow testimony. *Id.* at 464, ¶ 1.

¶16 Assuming for purposes of argument that Foster Parents may assert the due-process rights at issue in *Volk*, in contrast to that case, there is no indication in the record that the reports Foster Parents submitted and the court reviewed required clarification or explanation. There was no disagreement at the hearing that each family could offer Child an appropriate, warm and loving home. In deciding placement, the Court was not deciding disputed issues of fact about the respective families; instead, as the court explained, it weighed the statutory preference granted to family members against the possibility that Child might suffer emotionally if she were transferred again.[3]

**B.    Compliance with A.R.S. § 8-514(B).**

¶17 Foster Parents also argue the superior court failed to comply with A.R.S. § 8-514(B) and abused its discretion in finding placement with Great Aunt and Uncle was in Child's best interests.

¶18 The superior court has broad discretion in determining the placement of a dependent child; we review placement orders for an abuse of that discretion. *Antonio P. v. Ariz. Dep't of Econ. Sec.,* 218 Ariz. 402, 404, ¶ 8 (App. 2008). In ruling on placement, the court's primary consideration is the best interests of the child. *Id.* To the extent our review of an order involves the interpretation of a statute, we review the issue *de novo*. *In re Sheree M.,* 197 Ariz. 524, 525, ¶ 4 (App. 2000). This court interprets a statute according to its plain meaning. *Brunet v. Murphy,* 212 Ariz. 534, 539, ¶ 20 (App. 2006). When statutory language is clear, we apply it without using

---

[3]    Foster Parents argue "very important facts were wrong [in the court's order] and with just a little evidence that issue would have been clear." The only inaccuracies they cite, however, are the court's references to "maternal uncle and aunt." Under the authorities, however, that the other placement would have been Child's *great* aunt and uncle rather than her aunt and uncle is not significant. *See infra* Section B.

other means of construction, but when it is ambiguous or unclear, "we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *In re Marriage of Williams*, 219 Ariz. 546, 549, ¶ 10 (App. 2008) (quoting *Hughes v. Jorgenson*, 203 Ariz. 71, 73, ¶ 11 (2002)).

¶19            Pursuant to § 8-514(B), DCS "shall place a child in the least restrictive type of placement available, consistent with the needs of the child." The statute lists seven categories of prospective placements in "order for placement preference[.]" A.R.S. § 8-514(B). When a court is deciding between competing requests for placement, "[t]he statute requires only that the court include placement preference in its analysis of what is in the child's best interest." *Antonio P.*, 218 Ariz. at 405, ¶ 12.

¶20            The first two placement preferences listed in the statute are with a parent and with a grandparent, respectively. A.R.S. § 8-514(B)(1), (2). The third placement preference is "[i]n kinship care with another member of the child's extended family, including a person who has a significant relationship with the child." A.R.S. § 8-514(B)(3). The statute does not define either "kinship care" or "extended family," but Foster Parents contend the scope of those terms is limited by a statutory definition of another term, "relative." Foster Parents contend the superior court erred by affording a preference to Great Aunt and Uncle under § 8-514(B)(3) because "relative," as defined by § 8-501(A)(13) (2016), includes "aunt" and "uncle" but not "great aunt" and "great uncle." We see no principled reason, however, to restrict the scope of the preference afforded in § 8-514(B)(3) in such a manner.

¶21            Examining first the text of § 8-514(B), the statute does not use the word "relative" to describe any of the preference categories it establishes. After identifying separate preferences for a "parent" and a "grandparent," § 8-514(B)(1), (2), the statute then broadly categorizes all other forms of family placement (beyond placement with a parent or a grandparent) in subsection (3) as "[i]n kinship care with another member of the child's extended family[.]" We therefore infer that by "another member of the child's extended family," the legislature meant the third placement preference to include any member "of the child's extended family" other than a parent or a grandparent.

¶22            Section 8-501(A), on which Foster Parents' argument is premised, sets out the definitions of several terms that apply "[i]n this article, unless the context otherwise requires[.]" Subsection (A)(13) of § 8-

501 defines "relative" as "a grandparent, great-grandparent, brother or sister of whole or half blood, aunt, uncle or first cousin." Although § 8-514, the placement preference statute, falls within the same article as § 8-501, there is no reason to conclude that the legislature's definition of "relative" in § 8-501(A) limits the meaning of the broader terms "kinship care" and "extended family" when the legislature decided to use those terms (rather than "relative") in § 8-514(B).

¶23        In the first place, applying the definition of "relative" from § 8-501(A)(13) to the "extended family" preference in § 8-514(B)(3) would cause confusion because, as defined by the former statute, "relative" includes "grandparent." But the legislature could not have intended to put a grandparent in the third preference category with other extended family; it expressly granted grandparents their own distinct preference category (one step above "extended family"), in § 8-514(B)(2).

¶24        More generally, rather than specifying certain family members (as it did in defining "relative" in § 8-501(A)), the legislature used broad, general language ("member of the child's extended family") to establish the scope of the third placement preference afforded by § 8-514(B). The legislature's decision not to employ a narrower term or to add a definition that otherwise would restrict the scope of the term "extended family," particularly given the precise manner in which the legislature defined "relative" in § 8-501(A), demonstrates the legislature intended that "extended family" in § 8-514(B)(3) would apply broadly, encompassing more than the handful of family members who fall within the defined term "relative."

¶25        Moreover, nothing in the legislative history of the two provisions supports Foster Parents' argument that the definition of "relative" in § 8-501(A)(13) controls the meaning of "kinship care with another member of the child's extended family" in § 8-514(B)(3). The legislature added the definition of "relative" to § 8-501(A) in 1982 when it amended existing foster-care statutes to require the State to pay for medical and dental care for children in the legal custody of the State but placed with a relative. *See* 1982 Ariz. Sess. Laws, ch. 246, § 1 (2d. Reg. Sess.). The definition enacted then encompassed "a grandparent, brother or sister of whole or half blood, aunt, uncle or first cousin." *Id.*

¶26        In 1982, when the legislature added the definition of "relative," state law authorized the child welfare agency to place a child in the custody of the State with a "licensed foster home for care or for adoption." A.R.S. § 8-514(A) (1982); *see also* A.R.S. § 8-514 (1970) (same),

A.R.S. § 8-514(A) (1971) (same), A.R.S. § 8-514(A) (1978) (same). In 1990, the legislature added § 8-514.02, which expressly allowed the agency to place such a child "with a parent or relative." *See* 1990 Ariz. Sess. Laws, ch. 237, § 3 (2d. Reg. Sess.). At the same time, the legislature expanded the definition of "relative" in § 8-501(A) to include "great-grandparent." *See* 1990 Ariz. Sess. Laws, ch. 237, § 1 (2d. Reg. Sess.) (redefining and renumbering).

¶27 The legislature did not establish the placement preferences set out in § 8-514(B) until 2006. *See* 2006 Ariz. Sess. Laws, ch. 247, § 1 (2d. Reg. Sess.). Its decision to craft the broader term "kinship care with another member of the child's extended family" for use in the placement preference statute, rather than employ the term "relative," which it had defined for other purposes more than a decade before, supports the conclusion that it intended a more expansive notion of family placement than the one defined by "relative" in § 8-501(A)(13).[4]

¶28 Alternatively, Foster Parents argue the superior court misapplied § 8-514(B)(3) by failing to recognize that because they have a "significant relationship" with Child, they are entitled to the same preference the court afforded to Great Aunt and Uncle. *See* A.R.S. § 8-514(B)(3) ("In kinship care with another member of the child's extended family, including a person who has a significant relationship with the child."). The court ruled that because Child had been with Foster Parents for about four months, which it characterized as a "relatively short period of time," Foster Parents would not be given a statutory placement preference over Great Aunt and Uncle. On the record presented, we will not disturb that finding by the court. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

¶29 Finally, the record contains reasonable support for the court's conclusion that placement with Great Aunt and Uncle was in Child's best interest. As noted, Child's guardian ad litem praised both prospective placements, and the Interstate Compact report stated that Great Aunt and Uncle were "[c]ommitted to raising [Child] as their own and adopting" and "keeping [Child] connected to family." Foster Parents argue the court did not consider Child's best interests in applying the statutory preference in favor of Great Aunt and Uncle. But the court expressly found that both

---

[4] Foster Parents do not argue that, as limited by the definition of "relative" in § 8-501(A), the only "relative" placements DCS is authorized to make under § 8-514.02 are with a "grandparent, great-grandparent, brother or sister of whole or half blood, aunt, uncle or first cousin."

families would allow Child to "thrive, be successful and be loved very much."

## CONCLUSION

**¶30** Because the superior court did not violate Foster Parents' due-process rights and did not abuse its discretion by applying the statutory preference or by deciding that placement with Great Aunt and Uncle would be in Child's best interests, we affirm the placement order.



Ruth A. Willingham · Clerk of the Court
FILED: ama