NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SANDRA T., *Appellant*,

*v.*

TREVOR A., H.T., *Appellees*.

No. 1 CA-JV 15-0399
FILED 7-5-2016

Appeal from the Superior Court in Maricopa County
No. JS517250
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Offices, PLLC, Phoenix
By Keith Berkshire
*Counsel for Appellant*

Law Office of Bernard P. Lopez, Goodyear
By Bernard P. Lopez
*Counsel for Appellee Trevor A.*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

**C A T T A N I**, Judge:

**¶1** Sandra T. ("Mother") appeals from the juvenile court's denial of her petition to sever the parental rights of Trevor A. ("Father") to their child, H.T. For reasons that follow, we affirm the court's order.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** H.T. was born in October 2011. Mother and Father never had a formal relationship, and shortly after H.T.'s birth, their interactions became contentious. Through mediation, Mother and Father negotiated a settlement agreement addressing legal-decision making, parenting time, and child support. Father subsequently contested the agreement, but after conducting a hearing, the family court held that the agreement was valid and enforceable.

**¶3** Over the course of the next year, Father used increasingly inflammatory and offensive language when communicating with Mother. In September 2012, two days before Father was to take H.T. on vacation, Mother requested an order of protection against Father, which led to Father not taking H.T. on vacation. Mother and Father subsequently agreed to move the parenting exchanges to a police station, and the court appointed a parenting coordinator.

**¶4** Over the next few months, Father continued to use disrespectful and derogatory language, not only directed at Mother but also Mother's counsel and the parenting coordinator. In parenting exchanges at the police station, Father purposefully delayed returning H.T. to Mother, showed up late or did not show up at all, engaged in verbal confrontations with officers, and on several occasions aggressively put a video recorder in Mother's face. As a result of Father's increasingly unpredictable behavior, the parenting coordinator recommended an emergency suspension of Father's unsupervised visitation. The family court adopted the recommendation and required that Father attend anger management

2

counseling and obtain a psychiatric evaluation before unsupervised visitation would be reinstated.

¶5　　　　Father did not schedule supervised visits or fulfill the requirements to have unsupervised parenting time reinstated; rather, in April 2013 and February 2014 he filed motions to modify parenting time and child support obligations because he had moved to Maryland. The family court denied his requests.

¶6　　　　In June 2014, Mother filed a petition to terminate Father's parental rights to H.T., alleging that Father had abandoned H.T. by not seeing him since November 2012, and that Father had mental health issues that prevented him from parenting. The juvenile court granted Mother's request to serve discovery on Father, and Mother requested that Father identify any mental health professionals he had seen and the resulting diagnoses. Despite several deadline extensions, Father only partially responded to Mother's interrogatories and requests for admissions; he refused entirely to respond to discovery requests regarding his mental health at all, even after the court informed him that such information was not privileged. Mother asked the court to sanction Father for this refusal by drawing the adverse inference that Father has mental health issues that prevent him from parenting.

¶7　　　　At the severance hearing, Father, Mother, and the parenting coordinator testified. Father stated that he has never been diagnosed with a mental illness, but he continued to assert that mental health information was privileged and he refused to answer questions regarding previous assessments. The juvenile court considered voluminous exhibits, including text messages and emails from Father, as well as documents from the family court proceedings. After taking the matter under advisement, the court found that Father had abandoned H.T. The court declined to find, however, that Father had a mental illness that prevented him from parenting. Notwithstanding the abandonment ground for severance, the court nevertheless denied the severance petition, concluding that Mother had not shown that severance would be in H.T.'s best interests. Mother timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 8-235.[1]

---

[1]　　　　Absent material revisions after the relevant date, we cite a statute's current version.

**DISCUSSION**

## I.  Discovery Violation Sanctions and Due Process.

**¶8**　　　Mother argues that the juvenile court violated her due process rights by declining to enforce the discovery rules, because Father's refusal to answer questions about his mental health history prevented her from cross-examining him on that issue.  She also contends the court erred by failing to sanction Father for his discovery violations.

**¶9**　　　Under Arizona Rule of Procedure for the Juvenile Court ("Juvenile Rule") 44(G), the court may impose sanctions when a party fails to disclose discoverable information.  The court may also avail itself of the discovery provisions, including those for sanctions, found in Arizona Rules of Civil Procedure ("Civil Rules") 27–37.  *See* Ariz. R.P. Juv. Ct. 44(E).

**¶10**　　　We review de novo a claimed denial of due process, but even assuming a denial of due process, we will reverse only if the denial has prejudiced a party's interests.  *See Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016) (as amended); *County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010).  We review a decision regarding sanctions for an abuse of discretion.  *See Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009).

**¶11**　　　"The disclosure rules are designed to provide parties a reasonable opportunity to prepare for trial or settlement-nothing more, nothing less." *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 13 (App. 2003) (quotation omitted).  We prefer to decide cases on the merits; therefore, we interpret the disclosure rules in a manner to maximize the likelihood of doing so.  *See Rivers v. Solley*, 217 Ariz. 528, 530, ¶ 13 (App. 2008).

**¶12**　　　In finding that Mother had not demonstrated Father's inability to parent based on mental illness, the court stated it intended to draw an adverse inference based on Father's discovery violations, but concluded that this alone was not sufficient to prove that Father had a mental illness that rendered him unable to discharge parental responsibilities for a prolonged indeterminate period.  *See* A.R.S. § 8-533(B)(3).  In reaching this conclusion, the court acknowledged that Father's conduct was "significantly concerning," but stated that there was no evidence Father had undergone a psychological evaluation or been diagnosed with a mental illness.

**¶13**　　　Although the record demonstrates that Father engaged in inexcusable conduct and behaved badly throughout the family court

4

proceedings, Father's actions did not require a finding under A.R.S. § 8-533(B)(3) that he has a mental illness that will prevent him from discharging his parental responsibilities. While the court may have been justified in reaching a contrary conclusion, having observed and considered Father's testimony, the court did not abuse its discretion by rejecting Mother's claim regarding this issue. Moreover, the court found grounds for severance based on abandonment, and severance requires only a single underlying statutory ground. A.R.S. § 8-533(B); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000). Accordingly, an additional statutory ground based on an inference of mental illness was not necessary to establish a basis for severance.

**¶14** Mother also argues that sanctions were mandatory under Civil Rule 26(f), which provides that "[t]he court shall assess an appropriate sanction" for discovery violations that are "unreasonable, groundless, abusive or obstructionist." But under Civil Rule 27(f), the court retains discretion to determine an "appropriate" sanction under the circumstances. *See Taliaferro v. Taliaferro*, 188 Ariz. 333, 340–41 (App. 1996); *see also, e.g.,* Ariz. R. Civ. P. 37(b)(2), (c)(1), (d), (f) (collectively confirming the superior court's discretion to impose discovery sanctions appropriate to the circumstances presented); *cf.* Ariz. R.P. Juv. Ct. 36 (directing that the best interests of the child remains the primary consideration in interpreting the Juvenile Rules). Accordingly, the juvenile court had discretion to assess whether to sanction Father for his behavior, and Mother has not shown an abuse of that discretion.

## II. Best Interests.

**¶15** Mother argues that the court abused its discretion by concluding that severance was not in H.T.'s best interests because it did not properly consider factors relevant to the analysis. Because the juvenile court is best situated to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the court's best interests ruling unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶16** In a best interests analysis, we "may assume that the interests of the parent[] and the child diverge," because the parent has already been found unfit (in this case based on abandonment) under A.R.S. § 8-533(B). *Kent K. v. Bobby M.*, 210 Ariz. 279, 285, ¶ 31 (2005). But a statutory ground establishing a basis for severance does not compel the conclusion that

termination is in the child's best interests. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 14 (2016). Rather, the party moving for severance must show either that severance provides a benefit to the child or that the denial of severance will harm the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). Relevant factors include whether the existing placement is meeting the child's needs, and whether the child is adoptable. *Demetrius L.*, 239 Ariz. at 3–4, ¶¶ 12, 15; *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).

**¶17** Mother argues that the court erred in its best interests analysis by focusing on whether there was an immediately available adoptive parent and on the lack of specific harm to H.T., rather than giving weight to Mother's assertions that (1) she was adequately caring for the child, (2) Father has mental health issues, and (3) Father's behavior toward Mother negatively affected the child.

**¶18** Although Mother contends that the court did not consider that she was currently meeting H.T.'s needs, the court was aware of this from Mother's testimony. And while in certain circumstances the court could be justified in finding that severance was in the child's best interests based on that factor, the court may also weigh this against the harm that the child will face by losing a parent. *See Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990) ("This reasoning reflects an unspoken assumption that a parent, even an inadequate one, is better than no parent at all unless the child can somehow benefit from losing his natural parent."). The court is not compelled to make such a best interests finding just because Mother is adequately caring for the child.

**¶19** Mother also argues that the court misapplied the law by not considering the impact Father's behavior towards her would have on H.T. But the court expressly considered Father's behavior and nevertheless found that despite Father's abhorrent behavior towards Mother, he had not harmed or threatened to harm H.T. The court noted that Father had not seen H.T. in three years, and that any future contact would be subject to family court supervision.

**¶20** Mother's arguments essentially ask us to reweigh the evidence, which we will not do. *See Xavier R. v. Joseph R.*, 230 Ariz. 96, 100,

¶ 12 (App. 2012). Based on the current record, the juvenile court did not clearly err by denying the severance petition.[2]

## CONCLUSION

**¶21**        For the foregoing reasons, we affirm the juvenile court's order denying Mother's petition to sever Father's parental rights.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : AA

---

[2]        We note that our decision does not preclude Mother from filing a renewed petition for severance if continued abandonment or other circumstances result in additional harm to H.T., or if there are factors suggesting a potential benefit from severance.