NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

PETER D., *Petitioner/Appellee,*

*v.*

GEETIKA C., *Respondent/Appellant.*

No. 1 CA-CV 18-0678 FC
FILED 9-24-2019

Appeal from the Superior Court in Maricopa County
No.  FC 2017-006872
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Respondent/Appellant*

Law Offices of Dennis G. Bassi PLLC, Mesa
By Dennis G. Bassi
*Counsel for Petitioner/Appellee*

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kent E. Cattani and Chief Judge Peter B. Swann joined.

**B R O W N**, Judge:

¶1            Geetika C. ("Mother") appeals from the superior court's decree dissolving her marriage to Peter D. ("Father").[1] She asks us to vacate the court's decision on legal decision-making and parenting time and remand for a supplemental evidentiary hearing.  For the following reasons, we affirm.

## BACKGROUND

¶2            Mother and Father married in 2013 in Georgia.  Soon after, Mother gave birth to a child.  In 2014, Mother left Georgia with the child to live with her parents in Phoenix, ostensibly so she could take classes necessary to enlist in a medical residency program.

¶3            Father initially made periodic visits to Phoenix, during which Mother allowed him to see the child so long as someone else was present. Desiring to be with the child more, Father later moved to Phoenix as well. He lived in a separate residence, however, and Mother would allow him only one-hour nighttime visits with the child.  Eventually, in June 2017, Mother obtained an order of protection against Father, prohibiting him from contacting either her or the child.  The order was based on several allegations of Father's violence against either Mother, the child, or both. Police responded to some of these incidents, but other than interviewing Father, the record does not indicate any follow-up investigation was conducted and no charges were filed.

¶4            Soon thereafter, Father filed a petition for dissolution and requested temporary orders for parenting time.  The superior court issued an interim order (1) granting Father one hour of weekly supervised

---

[1]        To safeguard the identity of the minor child, we amend the caption as shown above. The amended caption shall be used on all future documents filed in this matter.

parenting time, (2) designating a Court Appointed Advisor ("CAA"), and (3) setting an evidentiary hearing on the petition for temporary orders.

¶5         In Mother's prehearing statement, she alleged that Father had issues with alcohol that led him to abuse both her and the child. She also recounted instances of Father being overly physical with the child and forcing the child to speak ill of Mother's parents. For these reasons, Mother sought sole legal decision-making but indicated she would accept continuing the parenting time schedule established by the interim order. Father, seeking joint legal decision-making and equal parenting time, denied Mother's allegations. After an evidentiary hearing, the superior court issued a temporary order setting a parenting time schedule whereby Father would begin with limited and supervised parenting time before gradually expanding to unsupervised visits.

¶6         Soon after Father's unsupervised visits began, he became the subject of several reports made to police or the Department of Child Services ("DCS"). In October 2017, Mother took the child to the hospital, where the child disclosed that Father had "poked him in his bottom." The hospital notified police and DCS, but authorities closed their investigation as unsubstantiated when the child made no similar disclosure in the forensic interview.

¶7         Mother returned to the hospital with the child in December, stating the child had a "red and inflamed rectal area" and had again reported Father was poking him. The hospital notified DCS, but after an examination showed neither of these symptoms, and an interview with the child revealed no evidence of abuse, DCS closed out this incident as unsubstantiated.

¶8         At school the following month, the child reported to a teacher that Father hit him. The child later reported to the school that Father threw him into a traffic-filled street and poked his rear end. The school reported this information to DCS, but the report was deemed unsubstantiated. DCS received a similar report from the child's school in May that was still pending as of trial.

¶9         Finally, in June 2018, a police officer conducted a welfare check at Father's residence after receiving a report that he was seen leaving a sports bar prior to picking up the child. Father denied drinking any alcohol at the bar and suspected Mother of following him.

¶10        At trial, the superior court heard testimony from the CAA, Father, Mother, and the child's paternal grandfather. At the end of

Mother's allotted time, the court denied her counsel's request "to bifurcate the proceeding" and conduct a supplemental hearing on another day to allow introduction of additional exhibits but allowed counsel to make a brief offer of proof. Counsel explained that the exhibits were recordings and transcripts of Father admitting, at least in part, Mother's allegations about domestic violence and child abuse. Counsel argued the exhibits provided "some corroboration . . . that what [Mother was] telling [the court] today was true." At the end of trial, Mother's counsel also requested the opportunity to explain what "three witnesses who would have testified with additional time" would have said. The court denied the request, stating: "The hearing's concluded. We are way over time. I was very generous with you all, both, on time."

¶11       After considering the statutory factors, *see* A.R.S. §§ 25-403(A) and -403.01, the superior court issued findings as to each factor and determined it was appropriate to award joint legal decision-making and equal parenting time. Mother unsuccessfully sought post-trial relief and her timely appeal followed.

## DISCUSSION

¶12       We review orders modifying parenting time and legal decision-making authority for an abuse of discretion. *Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 9 (App. 2016). A court abuses its discretion when it "commits an error of law that underlies its exercise of discretion." *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). We accept factual findings that are not clearly erroneous, but we "draw our own legal conclusions from facts found or implied in the judgment." *Nash v. Nash*, 232 Ariz. 473, 476, ¶ 5 (App. 2013).

### A.       Due Process

¶13       Mother argues the superior court denied her due process by refusing to hold a supplemental hearing after the trial. She contends the additional time was necessary to ensure she had a meaningful opportunity to be heard because she would have presented evidence making clear that the presumptions codified in A.R.S. §§ 25-403.03 and -403.04 barred Father from exercising legal decision-making.[2] Father asserts the court afforded

---

2       Mother also suggests the lack of time violated her substantive due process rights, citing *Stanley v. Illinois*, 405 U.S. 645 (1972) and *Santosky v. Kramer*, 455 U.S. 745 (1982). Substantive due process refers to whether a

Mother due process at every opportunity, Mother "squandered her time to such an extent that the trial was over," and she waived her ability to request additional time by failing to do so 30 days before trial.

**¶14** We review de novo whether the superior court afforded a party due process of law. *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016). Whenever a proceeding implicates a parent's fundamental liberty interest in raising his or her child, due process requires that the court afford the parent fundamentally fair procedures. *Cruz*, 240 Ariz. at 236, ¶ 11; *Jeff D.*, 239 Ariz. at 207, ¶ 7. At its core, due process guarantees "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process is also "flexible," so its procedural protections vary depending on the interests at stake. *Id.* at 334.

**¶15** Mother's due process argument relies primarily on *Volk v. Brame*, where we held that "when the resolution of an issue . . . requires an assessment of credibility, the court must afford the parties an opportunity to present sworn oral testimony, and may not rely solely on avowals of counsel." 235 Ariz. 462, 464, ¶ 1. In *Volk*, the superior court held a 15-minute hearing to determine a self-employed father's monthly income for purposes of calculating his child support obligations. *Id.* at 464–65, 470, ¶¶ 3–4, 25. Instead of allowing the parties an opportunity to explain their differing income calculations, the court spent the hearing collecting documentary exhibits "and indicated that it would assess the parties' credibility based solely on the disputed documents." *Id.* at 465–66, ¶¶ 6, 9–11. When the court rendered its decision, it simply adopted mother's calculation "to the penny." *Id.* at 466, ¶ 13.

**¶16** Because credibility was central to the issue before the superior court, we concluded that its exclusive reliance on a "paper view" of the case "categorically violate[d] due process." *Id.* at 466–67, ¶ 14. The fundamental flaw in the court's approach was its resolution of contested facts absent two critical checks of our adversarial system: sworn in-person testimony subjected to cross-examination. *Id.* at 467–69, ¶¶ 15–18, 23–24. We further

---

governmental act may legitimately interfere with a cognizable liberty interest, and procedural due process involves whether permissible interference is accomplished fairly. *See Samiuddin v. Nothwehr*, 243 Ariz. 204, 209, ¶ 13 (2017). We therefore construe Mother's suggestion as attempting to bolster her procedural due process claim that the court did not provide adequate procedures, given the importance of the liberty interest implicated.

held that a court may adhere to advance time limits unless, during the hearing, "it becomes apparent that the court lacks sufficient time to receive adequate testimony, then the court must allow reasonable additional time or continue the hearing to permit it to perform its essential tasks." *Id.* at 468, ¶ 21. We clarified, however, that trial courts need not "indulge inefficient use of time" and resolving requests for additional time is "normally committed to the[ir] discretion." *Id.* at 469, ¶ 22.

¶17 Like *Volk*, the critical issue in this case—whether the allegations against Father had merit—depended heavily on the superior court's credibility assessment. But unlike that case, the superior court afforded Mother the process she was due because she had ample time to gather, prepare, and present evidence related to the allegations that Father overconsumed alcohol and abused both her and the child, and she was able to cross-examine Father when he denied those allegations.

¶18 The superior court allotted each side 75 minutes of trial time to use as it saw fit. Although Mother used most of her allotted time cross-examining Father's witnesses, virtually all of her sworn testimony was devoted to providing a history of the physical and verbal abuse she claimed Father inflicted on her and the child. But in her nearly 20-minute long testimony, Mother did not seek to admit the audio recordings until she was already out of time. Although these recordings are not part of our record, Mother's prehearing list of witnesses and exhibits indicates the recordings identified in her offer of proof (exhibits 97, 101, and 103) *predate* the hearing on temporary orders. Mother thus had two opportunities to introduce these recordings and failed to do so.

¶19 Mother also had the opportunity to challenge, through cross-examination, any insinuation made by both the CAA and Father that her allegations lacked credibility. Mother engaged in three exchanges with the CAA designed to rebut the insinuation that she had been "looking for ways to prevent [F]ather from seeing [his child]" or that there was no "evidence suggesting that there might be something to what [M]other was saying." During one such exchange, as well as in her second report, the CAA briefly described the contents of the audio recordings. Thus, the superior court was at least generally aware of their contents. Likewise, the CAA's first report includes a description of her interview with two of the witnesses that Mother would have called to testify with the additional time.

¶20 As for Mother's cross-examination of Father, she asked him about alcohol consumption, including whether he had an alcohol-induced liver disorder and multiple prior DUI incidents. Mother also spent a

significant amount of time questioning how Father came to his conclusion that Mother was coaching the child, or was fabricating claims that she had abused herself, in order to prevent Father from seeing the child. Finally, Mother focused on her allegation that she had been abused by Father, relying on a letter suggesting that he had instigated a physical confrontation with her. On this record, Mother had ample opportunities to offer the audio recordings at trial within her allotted time limit.

¶21 Although Mother asserts that additional evidence would have bolstered her case, ultimately it was her and Father's credibility that were at issue. And we have no doubt that the court—sitting through this entire proceeding (including the hearing on temporary orders) and observing the parties' in-court testimony—had what it needed to determine whether Mother's allegations were credible. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("We must give due regard to the . . . court's opportunity to judge the credibility of the witnesses."). Unlike *Volk*, Mother's due-process rights were fully respected here, and the court did not abuse its discretion by denying her request for a supplemental hearing. *See Volk*, 235 Ariz. at 469, ¶ 22.

## B. Statutory Presumptions

¶22 Mother also contends that even without a supplemental hearing, A.R.S. §§ 25-403.03 and -403.04 should have applied to either prevent Father from exercising joint legal decision-making or at least required him to overcome a rebuttable presumption to do so. Father counters that these statutes did not apply because Mother's allegations "have all gone unsubstantiated."

¶23 When considering the child's best interests, the superior court "must consider all relevant factors, including those enumerated in A.R.S. § 25-403(A)." *Christopher K. v. Markaa S.*, 233 Ariz. 297, 301, ¶ 18 (App. 2013). A court abuses its discretion when it fails to make findings required by the statute. *Hurd*, 223 Ariz. at 51, ¶ 11. But when it makes the required findings, we affirm the court's ruling if supported by substantial evidence. *Id.* at 52, ¶ 16.

### 1. Domestic Violence

¶24 The superior court must always consider "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03." A.R.S. § 25-403(A)(8). When the court finds "the existence of significant domestic violence pursuant to § 13-3601 or . . . a significant history of domestic violence," it cannot award joint legal decision-making. A.R.S.

7

§ 25-403.03(A); *see also Christopher K.*, 233 Ariz. at 300–01, ¶ 17 (explaining that domestic violence under § 13-3601 includes criminal assault, unlawful imprisonment, or child abuse, which "may include the infliction of physical injury or emotional damage"). If the court finds that one parent committed even one "act of domestic violence against the other parent, there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act . . . is contrary to the child's best interests." A.R.S. § 25-403.03(D).

¶25 Mother first faults the superior court for applying the wrong legal standard, arguing its finding ignores that the rebuttable presumption against joint legal decision-making requires only one act of domestic violence, not "significant domestic violence" that bars legal decision-making altogether. But Mother overlooks the fact that the court incorporated by reference its earlier findings regarding her domestic violence allegations. The court stated that it "believe[d] that Father would get frustrated, angry, and demanding, but [found] no credible evidence to support allegations of physical or verbal abuse against the child or physical violence [against] Mother." As such, we reject Mother's argument that the court applied the wrong standard.

¶26 Mother next "disagrees with the [superior] court's assessment anyway," asserting there was a significant history of domestic violence. But Mother's argument is merely a request to reweigh the evidence, which is not our function. *Hurd*, 223 Ariz. at 52, ¶ 16. Regardless, reasonable evidence supports the court's finding that no significant history of domestic violence exists between Mother and Father. Despite Mother's contention that Father admitted to an act of domestic violence in an October 2016 letter to Mother, later in the same letter Father states that no physical confrontation occurred. As discussed above, Father denied the allegations of abuse against him—none of which were substantiated by investigation or medical evidence—and the only evidence presented on this issue was conflicting witness testimony. Given that the court observed the witnesses provide their testimony, we will not disturb its credibility determination. *Id.* The court appropriately carried out its duty to consider domestic violence issues as contemplated by A.R.S. § 25-403.03.

### 2. Substance Abuse

¶27 Whenever "relevant to the child's physical and emotional well-being," the superior court must consider whether a parent has abused drugs or alcohol. A.R.S. §§ 25-403(A), -403.04(A). As pertinent here, "[i]f the court determines that a parent has abused drugs or alcohol . . . there is

a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests." A.R.S. § 25-403.04(A).

¶28 Mother again asserts the superior court applied the wrong standard when it found that no facts "support[ed] Mother's claim that Father is impaired during [h]is parenting time or that his alcohol consumption ha[d] ever presented a risk of harm to the child." We decline to construe the court's finding to mean that it did not consider evidence related to Father's alcohol consumption generally. Instead, the court's finding must be read in light of the preceding sentence, which states "[t]he Court considers Mother's allegation that Father abuses alcohol and the evidence presented on this issue." Thus, the court did not misapply the law and it properly exercised its broad discretion in weighing the evidence. Aside from a hospital record indicating Father had a "fatty liver" condition and an admitted-to 2001 DUI conviction, no evidence bore on this issue aside from the conflicting testimony of the parties. The court found Father's account that he did not abuse alcohol, which was supported by the CAA's report, more credible, and we will not disturb that determination on appeal.[3]

### C. Attorneys' Fees and Costs

¶29 Both parties request attorneys' fees under A.R.S. §§ 25-324(A) and 25-415(A)(2). To the extent the record includes proof of the parties' financial resources, it suggests Father has greater resources than Mother. Concerning the parties' positions on appeal, Mother has arguably taken some positions that are not well-supported by the record or the law. In our discretion, we decline to award fees to either party under A.R.S. § 25-324(A). We also decline to award fees under A.R.S. § 25-415(A)(2), which authorizes a court to award attorneys' fees based on a party's misconduct. Because Father is the successful party on appeal, he may recover his taxable costs upon compliance with ARCAP 21.

---

[3] Mother makes much of an alleged 2011 arrest for DUI in Georgia. Because the record of this arrest was not presented to the superior court, we do not consider it. We recognize, however, that the CAA's second report mentions Mother providing her with a document listing his arrest, meaning that at least some evidence of this arrest was before the court, which could give it the weight it was due.

## CONCLUSION

¶30        Based on the foregoing, we affirm the superior court's decree of dissolution.



AMY M. WOOD • Clerk of the Court
FILED:   AA