NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of

MICHELLE WARREN, *Petitioner/Appellee*,

*v.*

KENNETH STEPHENS, *Respondent/Appellant*.

No. 1 CA-CV 22-0337 FC
FILED 2-14-2023

Appeal from the Superior Court in Maricopa County
No. FC2017-097032
The Honorable Lisa S. Wahlin, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Amy D. Sells, David M. Barlow
*Counsel for Petitioner/Appellee*

The Murray Law Offices, PC, Scottsdale
By Stanley D. Murray
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1          Kenneth Stephens ("Husband") appeals from the superior court's post-decree property and debt division order and the denial of his motion to alter or amend that order.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Husband and Michelle Warren ("Wife") married in 1994. Wife petitioned for dissolution in November 2017.  While that petition was pending, in September 2018, Husband filed a Chapter 13 bankruptcy petition.[1]  In his petition, Husband claimed a homestead exemption in the parties' marital home.  *See* Ariz. Rev. Stat. ("A.R.S.") § 33-1101(A)(1).[2]  Then, in January 2019, the superior court issued its decree dissolving the parties' marriage and addressing legal decision-making, parenting time, and child support.  But because of the stay imposed by Husband's ongoing bankruptcy proceedings, *see* 11 U.S.C. § 362(a), the court did not divide the parties' property and debts.

---

[1]          In a Chapter 13 bankruptcy, creditors recover the debtor's future earnings through a court-approved payment plan and the debtor keeps any assets.  Meredith Johnson, Note, *At the Intersection of Bankruptcy and Divorce: Property Division Debts Under the Bankruptcy Reform Act of 1994*, 97 Colum. L. Rev. 91, 94 (1997).

[2]          We cite the statute version in place when the petition was filed, as bankruptcy exemptions are determined by the state law in place at the time of filing.  *See In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012).

¶3          The next month, Wife filed her own Chapter 7 bankruptcy petition.[3]  In her petition, Wife also claimed an exemption in the parties' marital home.  *See* A.R.S. § 33-1101(A)(1).  In January 2020, the bankruptcy court approved a settlement agreement in Wife's bankruptcy.  Under the settlement, Husband paid about $5,000 to Wife's bankruptcy estate and in return received the estate's interest in certain property, including Wife's non-exempt community equity in the marital home.  Wife then received her discharge from bankruptcy.

¶4          In May 2021, the bankruptcy court lifted the stay in Husband's bankruptcy to allow the superior court "to divide the community property and non-dischargeable debt of the parties."  Wife then filed in superior court a "Motion to Enforce Final Judgment of Dissolution of Marriage and Petition for Undivided Retirement Assets."  The superior court set an evidentiary hearing to determine the proper division of the parties' community property and debts.  The contested issues included the division of equity in the marital home, the division of Husband's Allstate Retirement Plan ("Allstate Plan"), and the division of community debts.  At the close of the hearing, the superior court denied Husband's request for more time to present evidence but permitted the parties to submit supplemental briefing.

¶5          After taking the matter under advisement, the superior court awarded Wife the full $150,000 of equity in the marital home protected by the homestead exemption, ordered Husband's Allstate Plan divided by Wife's proposed Qualified Domestic Relations Order ("QDRO"), and ordered each party responsible for their separate debts.  Husband timely moved to alter or amend the court's order.  *See* Ariz. R. Fam. Law P. 83.  After responsive briefing, the court amended its order to reflect that Husband's bankruptcy proceedings were ongoing and to clarify that the parties were entitled to any personal property in their possession and that Husband was awarded the marital home, subject to the mortgage.  The court denied Husband's additional requested relief.

¶6          Husband timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1) and (2).

---

[3]          Unlike Chapter 13, in Chapter 7, the trustee collects the debtor's non-exempt property, then liquidates it, distributing the proceeds to creditors.  *See* Johnson, *supra* note 1, at 94.

## DISCUSSION

**¶7**   We review for an abuse of discretion the division of community property, *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007), and the denial of a motion to alter or amend, *Stock v. Stock*, 250 Ariz. 352, 354, ¶ 5 (App. 2020). "[W]e consider the evidence in the light most favorable to upholding the superior court's ruling and will sustain the ruling if it is reasonably supported by the evidence." *Boncoskey*, 216 Ariz. at 451, ¶ 13 (citing *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005)). The superior court's division of community property must be "equitabl[e], though not necessarily in kind." A.R.S. § 25-318; *accord Toth v. Toth*, 190 Ariz. 218, 221 (1997).

## I.  Marital Home

**¶8**   For the first time on appeal, Husband argues Wife could not claim any marital home equity protected by Arizona's homestead exemption. *See* A.R.S. § 33-1101(A)(1). Husband contends that because his separate pretrial statement raised the homestead exemption and marital home equity issues, he has not waived this argument. But in superior court, Husband argued that Wife was entitled to one half the equity preserved by the homestead exemption, not that she had no equity claim. His argument to the superior court thus expressly contemplated that Wife properly claimed a homestead exemption, at least in some amount. Because Husband did not argue Wife had no claim to a homestead exemption to the superior court, he waived it. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 594, ¶ 25 (App. 2021).

**¶9**   Husband also argues that awarding the "entire homestead exemption" to Wife was inequitable. Wife concedes that when making its award, the superior court incorrectly reasoned that "[b]ecause Husband filed a separate bankruptcy that included the home, Wife is not entitled to half of the equity in the home." But we may affirm the superior court's order if it is correct for any reason apparent in the record. *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

**¶10**   Wife filed for bankruptcy in February 2019, a month after the superior court entered the decree ending the parties' marriage. Upon her filing for bankruptcy protection, Wife's community interest in the marital home became a part of her bankruptcy estate. *See* 11 U.S.C. § 541(a). But because Wife claimed a homestead exemption, her bankruptcy estate did not include $150,000 of the home's community equity. *See* A.R.S § 33-1101(A)(1). As Husband properly notes, when he bought Wife's non-

exempt community interest in the home from her bankruptcy estate after he was served Wife's petition for dissolution, it became his separate property. *See* A.R.S. § 25-213(B). The balance of the home's equity, including the amount protected by the homestead exemption, remained community property.

**¶11**　　　　Husband's argument that awarding the entire homestead exemption to Wife was inequitable ignores that the court was dividing not only the homestead exemption, but the home's remaining community interest. *See In re White*, 851 F.2d 170, 171 (6th Cir. 1988) (noting that when the automatic stay is lifted in bankruptcy court proceedings, state courts may divide marital property, including property in a spouse's bankruptcy estate). Though the superior court's order stated that the property at issue was the "$150,000 Homestead Exemption," the amended order awarding Husband the marital home subject to the mortgage makes clear the court was dividing the marital home's community interest, which included the interest Husband surrendered to his bankruptcy estate *and* the $150,000 in equity protected by the homestead exemption.

**¶12**　　　　At the evidentiary hearing, Husband introduced evidence that when Wife petitioned for dissolution, she estimated the marital home's value at $150,000. But the superior court properly exercised its discretion and valued the home as of the hearing date, *see Sample v. Sample*, 152 Ariz. 239, 242 (App. 1986), and accepted Wife's uncontradicted testimony that the home's value as of the hearing was approximately $900,000, and the home is subject to a $320,000 mortgage, leaving slightly more than $550,000 in equity.

**¶13**　　　　Using the marital home's valuation as of the hearing, Husband's separate property interest in the home—Wife's non-exempt community interest he bought from her bankruptcy estate—was approximately $125,000: half the $550,000 in equity, less the $150,000 protected by Wife's homestead exemption. The rest of the home's $425,000 of equity, including the $150,000 protected by the homestead exemption, remained community property. The superior court awarded Wife the full $150,000 in equity protected by the homestead exemption. But Husband was not left without a share of the community interest in the home. After Wife's award, Husband retained $275,000 of equity in the home. And as Husband notes, the home is not at risk in his bankruptcy proceedings because he is in a Chapter 13 bankruptcy and current on his plan payments. Even if Husband were to lose the home in his bankruptcy, he would retain the $150,000 protected by his claimed homestead exemption, equal to Wife's award. Husband has shown no abuse of discretion in the superior

court's $150,000 equity award to Wife where Husband received the home with a greater amount of equity.

¶14　　　　Husband also argues Wife's award should have been offset to account for payments he made toward community debt after the community terminated.　It is true that "when a party voluntarily makes post-service payments toward community debt with separate funds, the superior court must account for the payments in its equitable property distribution." *Ferrill v. Ferrill*, 253 Ariz. 393, 396, ¶ 10 (App. 2022) (citing *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017)).　But here, though the superior court heard testimony about community debts, Husband presented no evidence as to the debt amounts or his post-service payments. As such, the superior court had no basis to equitably offset Wife's award. On this record, the superior court did not abuse its discretion in denying Husband's motion to alter or amend and awarding Wife $150,000 of equity in the marital home.

## II.　　Allstate Retirement Plan

¶15　　　　Husband argues the superior court erred in dividing Husband's Allstate Plan by using Wife's proposed QDRO because it "is not supported by the evidence and is contrary to law."　Even so, he acknowledges the portion of the Allstate Plan earned during the parties' marriage is community property subject to equitable division.　*See Boncoskey*, 216 Ariz. at 451, ¶ 14.

¶16　　　　The community interest in a spouse's pension plan can be calculated under either the "present cash value method" or the "reserved jurisdiction method." *Johnson v. Johnson*, 131 Ariz. 38, 41 (1981).　Though the present cash value method is preferred, the reserved jurisdiction method is appropriate if the pension rights cannot be accurately valued, and the marital estate has insufficient property to satisfy the non-employee spouse's claim. *Id.* at 42.　Here, as Husband acknowledges in his opening brief, the superior court properly applied the reserved jurisdiction method to calculate the community interest in the Allstate Plan because the parties presented no evidence of the plan's present cash value and no other equivalent community property existed to satisfy Wife's claim. *See id.*

¶17　　　　Under the reserved jurisdiction method, the pension's community share is calculated "by dividing the length of time worked during the marriage by the total length of time worked toward earning the pension." *Boncoskey*, 216 Ariz. at 452, ¶ 18 (quoting *Johnson*, 131 Ariz. at 41 n.4).　Wife's proposed QDRO states the community portion of the plan

shall be determined by multiplying [Husband's] Accrued Benefit by a coverture fraction, the numerator of which is the number of months of the [Husband's] creditable service in the [p]lan earned during the marriage (from February 20, 1994, to November 20, 2017), and the denominator of which is the number of months of service credited to [Husband] under the terms of the [p]lan up to the earlier of [Husband's] benefit commencement date or commencement of benefit payments to [Wife].

(Emphasis omitted.) Husband argues this language assumes Husband worked at Allstate throughout the parties' marriage and uses an incorrect formula to calculate the plan's community interest because it "lists the length of the parties' marriage as the numerator and length of time to distribution of the retirement benefit as the denominator." But the QDRO does not in fact state the length of the marriage is the numerator. It states that the numerator is the length of Husband's employment during the marriage, then provides the marriage dates for Allstate to use in determining the number of months Husband was employed during the marriage. And the denominator is the number of months Husband was employed under the plan. The QDRO thus properly calculates the community interest in the Allstate Plan. *See id.*

**¶18** In his motion to alter or amend, Husband argued that the QDRO "does not contain the relevant dates of Husband's employment with Allstate, which is a necessary component for calculating Wife's" interest. Though including Husband's employment dates may have added clarity to the QDRO, presumably Allstate has Husband's employment dates and needed only the parties' marriage dates to accurately calculate the community interest under the QDRO formula listed. The superior court did not abuse its discretion in denying Husband's motion to alter or amend and ordering the Allstate Plan to be divided by Wife's proposed QDRO.

## III.    Due Process

**¶19** Husband argues the superior court violated his right to due process by denying his request for more time to present evidence of community debts and his post-service payments on those debts. Whether Husband was afforded due process is a question of law we review *de novo*. *Backstrand v. Backstrand*, 250 Ariz. 339, 346, ¶ 28 (App. 2020).

**¶20** "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *Id.* at ¶ 29 (quoting *Jeff D. v.*

*Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 7 (App. 2016)). This requires that litigants be heard "at a meaningful time and in a meaningful manner." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). But we recognize the superior court has "broad discretion to impose reasonable time limits on proceedings and control the management of its docket." *Id.* (citations omitted). Thus, due process allows the superior court to impose reasonable time limits on proceedings, but if those time limits "prove insufficient to allow a substantive hearing," they become unreasonable and can amount to a denial of due process. *Id.* (quoting *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 21 (App. 2014)). Whether more time is necessary is "committed to the [superior] court's discretion." *Id.* (citing *Volk*, 235 Ariz. at 469, ¶ 22).

**¶21** In an October 2021 minute entry, the superior court set a two-hour evidentiary hearing. At the hearing, Husband's counsel began by arguing a motion for sanctions filed two business days before the hearing. Husband's counsel then chose to break up his testimony to have Husband's bankruptcy attorney testify to the effect of Husband's bankruptcy on the division of community property. Only as the hearing was ending did Husband request more time and seek to introduce an exhibit showing his post-service separate property payments toward community debt. The superior court denied Husband's request, informing him that "[t]he evidence . . . is closed." The court did, however, permit both parties to submit supplemental briefing. Husband later moved to alter or amend the court's order, arguing the superior court improperly denied his request for more time to present evidence. The court denied Husband's motion on this ground.

**¶22** Husband argues the complex issues in this case "demonstrate how inadequate a two-hour trial time limitation was." But Husband had ample notice of the two-hour time limitation and failed to request more time until the end of the hearing. And Husband received a meaningful opportunity to present evidence of community debts and his claims for offsets. His counsel was free to divide his allotted time between his two witnesses and he received the same time allotment as Wife. The failure to properly manage the time allotted does not amount to a denial of due process. *See Volk*, 235 Ariz. at 469, ¶ 22 (noting due process does not require the superior court to "indulge inefficient use of time by parties or their counsel"). Husband has shown no error in the superior court's denial of his request for more time to present evidence or its denial of his motion to alter or amend.

## IV.     Attorneys' Fees and Costs on Appeal

¶23     Both parties request attorneys' fees incurred in this appeal under A.R.S. § 25-324.  Having considered the relevant factors, in our discretion, we deny both requests.  As the prevailing party, Wife is entitled to her taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶24     We affirm.

