167 P.3d 705

In re the Marriage of Timothy L.
BONCOSKEY, Petitioner–
Appellant,

v.

Laura S. BONCOSKEY aka Laura
S. Scott, Respondent–Appellee.

No. 1 CA–CV 06–0289.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 25, 2007.

Bill Stephens PC, by Bill Stephens, Phoenix, Attorney for Appellant.

Cates Hanson Sargeant & Rakestraw PLC, by William P. Sargeant, III, Leslie L. Rakestraw, Phoenix, Attorneys for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Timothy L. Boncoskey ("Husband") appeals the superior court's order directing the manner in which his retirement account benefits shall be distributed between him and Laura S. Boncoskey aka Laura S. Scott ("Wife"). For the following reasons, we reverse the court's order and remand this matter for further proceedings.

## BACKGROUND

¶ 2 Husband and Wife were divorced in 2003, after more than fourteen years of marriage. The superior court entered a consent decree of dissolution that incorporated the parties' settlement agreement. The settlement agreement resolved the division of the marital property, spousal maintenance, child custody and visitation, child support, and attorneys' fees.

¶ 3 At the time of the dissolution, Husband was forty years old and had worked for the State of Arizona for approximately twelve and one-half years. While employed by the State, he participated in the Arizona State Retirement System ("ASRS") and was eligible to receive a monthly pension benefit upon his retirement.[1] The pension is administered by the ASRS and is a defined benefit plan that pays retired employees a monthly pension based upon a formula, usually related to the employee's years of service and average salary. Ariz.Rev.Stat. ("A.R.S.") §§ 38–757 to –758 (2001); *Johnson,* 131 Ariz. at 42, 638 P.2d at 709.

¶ 4 When an employee participating in the ASRS meets the requirements for normal retirement, he is entitled to receive a monthly life annuity, the amount of which is calculated based upon the employee's average monthly compensation and length of employment. A.R.S. § 38–757. If the employee elects early retirement, however, the normal retirement benefits to which the employee would otherwise be entitled are reduced. A.R.S. § 38–758.

¶ 5 In addition, the ASRS allows an employee to elect as an optional form of retirement benefit a joint and survivor annuity. A.R.S. § 38–760 (Supp.2006). If the employee makes such an election, he receives a reduced monthly payment throughout his lifetime, but after his death, all or a portion of the monthly payment continues during the life of the person designated as the contingent annuitant. A.R.S. § 38–760(B)(1).

¶ 6 The parties' settlement agreement provided that Husband and Wife would each be entitled to one-half of the community's interest in the pension and that such division would be effectuated by a Qualified Domestic Relations Order ("QDRO").[2] But, the parties were unable to resolve how the pension should be divided and ultimately agreed to the appointment of a Special Master to make a recommendation to the court. In its ruling appointing the Special Master, the trial court mentioned two prior Arizona Supreme Court cases, *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977), and *Johnson,*[3] but stated

---

1. An employee's right in such plans may be either vested or unvested. A "vested" pension right is one in which the right to receive a pension is not subject to forfeiture if the employment relationship terminates prior to retirement. *Johnson v. Johnson,* 131 Ariz. 38, 41 nn. 2, 3, 638 P.2d 705, 708 nn. 2, 3 (1981). Also, although an employee's right to a pension may have vested after a certain number of years of employment, his right may not "mature" until the employee reaches certain specified milestones that may be based on age and number of years of service.

Thus a "matured" pension right is an unconditional right to immediate payment. *Id.*

2. The parties agreed that the community's interest in the Pension terminated on the date of service of Husband's petition for dissolution.

3. *Johnson* involved a husband's defined contribution plan, and the supreme court held that in calculating the wife's interest, the trial court should use the present cash value in determining her interest, especially when the husband was

that *Koelsch v. Koelsch*, 148 Ariz. 176, 713 P.2d 1234 (1986), controlled the valuation and payment parameters for this case.

¶ 7 The Special Master's order proposed to the court stated that he was confused because he understood *Koelsch* to hold that the community cannot share retirement benefits that accrue after the date the community ends and that this holding was inconsistent with application of a *Van Loan* fraction [4] to a final retirement benefit. Nevertheless, because the court had specified that *Koelsch* controlled, the Special Master determined that Husband could retire at age 50, valued the pension as of that date, and recommended that Husband begin making monthly payments to Wife in the amount of $530 per month as her share of the community's interest in the pension. The Special Master also recommended that whenever Husband actually did retire, his payments to Wife should cease and any subsequent payments to Wife should come from ASRS pursuant to a domestic relations order. The latter order also could address Wife's interest in the death benefits that Husband had accumulated as of the date of dissolution. The Special Master suggested that Husband's direct payments to Wife be characterized as non-modifiable spousal maintenance in order to be tax-deductible to him and that the payments end upon the death of either party or once Wife began receiving her share of the pension from ASRS. Finally, he recommended that Wife might elect to receive a 50% survivor benefit from ASRS and if so that she be charged with the full cost of that benefit.

¶ 8 Husband objected, arguing that a premise of the settlement agreement was that there would be no lump sum buy-out of Wife's interest in the pension and that she

waived any right to spousal maintenance; thus, she should not begin receiving spousal maintenance when Husband turned age fifty. He also objected that because the parties had agreed to a QDRO, Wife was entitled only to payments from ASRS rather than from him to begin only when the plan began making pension payments upon his retirement and not before.

¶ 9 Nevertheless, the court adopted the Special Master's report and ordered him to prepare a Domestic Relations Order ("DRO") consistent with the report. The court signed the DRO, which acknowledged that a separate order would require Husband to pay Wife $530 beginning at age 50, and directed that ASRS pay Wife $530 per month out of Husband's retirement benefit. It also required Husband to elect a joint and 50% survivor annuity benefit and that Wife's payment be reduced by the amount necessary to give Husband what he would have received under a single life annuity.

¶ 10 Husband timely appealed from the DRO. We have jurisdiction pursuant to A.R.S § 12–2101(C) (2003).

## DISCUSSION

¶ 11 Husband argues that by adopting the DRO, the superior court misapplied the law and inequitably apportioned the pension. He specifically contends that the court abused its discretion in ordering him to make monthly payments to Wife when he turns 50 and in ordering that Wife receive a 50% survivor benefit based upon the value of the entire pension rather than the portion that had accrued during marriage.

young and intended to work for many more years. 131 Ariz. at 41–42, 638 P.2d at 708–09. If the cash value method could not be used, however, the trial court could retain jurisdiction and award the proper percentage of each pension payment "if, as, and when it is paid out." *Id.* at 41, 638 P.2d at 708.

4.  *Van Loan* held for the first time that a wife was entitled to a one-half interest in her husband's military pension even though he had not retired and the pension right would not vest until six months after the date of dissolution. 116 Ariz. at 273–74, 569 P.2d at 215–16. The court also

found the husband had waived any objection to the trial court's formula for calculating the community's interest in the pension payments: the fraction being the number of years the parties were married while the husband was in the military and the *denominator being the number of years actually served* if and when he decided to retire. *Id.* at 273, 569 P.2d at 215 (emphasis added). Justice Holohan dissented on the ground that the formula allowed the wife to share increases in the pension due to the husband's efforts or time. *Id.* at 276, 569 P.2d at 218 (Holohan, J., dissenting).

*This Court's Jurisdiction*

¶ 12 We first address Wife's contention that we lack jurisdiction of the appeal because Husband did not appeal from the trial court's July 5, 2005 order adopting the Special Master's report and because the March 27, 2006 DRO from which Husband did appeal was not a final appealable order. Our review of the record persuades us that the superior court did not intend the July 2005 order to be final but contemplated the later preparation and entry of the DRO.[5] Thus, once the court issued the DRO, the DRO became a final appealable order incorporating the earlier July 2005 order. A.R.S. § 12–2101(C); *In re Marriage of Dorman*, 198 Ariz. 298, 300–01, 9 P.3d 329, 331–32 (App.2000) (holding order modifying portion of decree was special order after judgment because it raised issues different than those that would be raised in appeal from decree and affected decree and its enforcement). Husband timely appealed from the DRO, and thus we have jurisdiction. *See Hill v. City of Phoenix*, 193 Ariz. 570, 572, ¶ 10, 975 P.2d 700, 702 (1999) (if opposing party has received adequate notice, mere technical error should not bar appellate court from reaching merits). We now turn to Husband's contentions.

*Division of Husband's Pension*

¶ 13 In apportioning community property between the parties at dissolution, the superior court has broad discretion to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion. *Miller v. Miller*, 140 Ariz. 520, 522–23, 683 P.2d 319, 321–22 (App.1984); *Lee v. Lee*, 133 Ariz. 118, 649 P.2d 997 (App.1982). But the court may abuse its discretion if it "commits an error of law in the process of exercising its discretion." *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2, 118 P.3d 621, 622 (App.2005). In reviewing the trial court's apportionment of community property, we consider the evidence in the light most favorable to upholding the superior court's ruling

and will sustain the ruling if it is reasonably supported by the evidence. *Id.*

¶ 14 It is well-established in Arizona that pension rights "are generally viewed as a form of deferred compensation for services rendered by employees" and that pension rights earned by the community effort of a spouse during marriage are community property subject to equitable division. *Johnson*, 131 Ariz. at 41, 638 P.2d at 708 (citing *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976)); *see also Koelsch*, 148 Ariz. at 181, 713 P.2d at 1239; *Van Loan*, 116 Ariz. at 273–74, 569 P.2d at 215–16. Thus, even if the employee spouse is not yet entitled to a pension, he "and thereby the community, does indeed acquire a property right in ... pension benefits," even if the rights have not vested, that is subject to division upon dissolution. *Van Loan*, 116 Ariz. at 274, 569 P.2d at 216.

¶ 15 It is important, however, to distinguish between mature pension rights, which can be more easily valued, and rights that have not yet matured and will not do so for many years. In this case, Husband did not possess an unconditional and immediate right to payment of pension benefits that he simply wished to postpone receiving, as in *Koelsch*. And although the parties stipulated to appointment of a Special Master when they could not agree on how to value Wife's interest in Husband's pension, the parties did not stipulate that *Koelsch* should control that calculation.

¶ 16 In contrast with the situation in *Koelsch* but like the situation in *Johnson*, Husband's benefits were not "mature" and would not be mature until, at the earliest, Husband turns age 54. A.R.S. § 38–711(27) (2006). Also as in *Johnson*, Husband has asserted not only that his rights are not mature but that even if he will be eligible to retire at age 54, he does not intend to retire until he is approximately 67 years old. When a party's pension rights are not ma-

---

5. Although the DRO states that that court *"shall* by separate Order require [Husband] to make direct payments to [Wife] of $530.00 per month beginning on [Husband's] 50th birthday and ending on the earlier of the date Husband dies, Wife dies, or this Order is implemented," (emphasis added), we conclude that the court intended that the July 2005 order constitute the separate order regarding the $530 monthly payments to Wife.

ture, *Johnson* rather than *Koelsch* is the proper authority.

¶ 17 As the *Johnson* court observed, a division of the community's interest in a pension based on the pension's present cash value at dissolution is preferred because it eliminates any community claims that come to fruition many years in the future as well as the need for continued judicial supervision of the parties' pension rights. 131 Ariz. at 41–42, 638 P.2d at 708–09. But in this case, because no community assets remained unallocated by the time the court entered the DRO, the cash value method could not be used to allocate the pension rights between the parties, and the court instead had to rely on the reserved jurisdiction method to apportion the pension. *Id.*

■ ¶ 18 The community share of a pension under the reserved jurisdiction method, according to *Johnson,* is obtained "by dividing the length of time worked during the marriage by the total length of time worked toward earning the pension." *Id.* at 41, n. 4, 638 P.2d at 708, n. 4 (citing *In re Marriage of Judd,* 68 Cal.App.3d 515, 137 Cal.Rptr. 318, 321 (1977)). Actual division of pension payments occurs "if, as, and when" the pension is paid out. *Id.* In *Judd,* the California court explained that the above formula is properly based on the employee's total number of years of service because when

> the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits …, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service

necessary to earn those benefits. The relation between years of community service to total years of service provides a fair gauge of that portion of retirement benefits attributable to community effort.

137 Cal.Rptr. at 321.[6]

¶ 19 When our supreme court later decided *Koelsch,* it distinguished *Johnson* as a case that had involved valuing the nonemployee spouse's interest *when the pension rights had not yet matured.* 148 Ariz. at 180, 713 P.2d at 1238 (emphasis added). Unlike *Johnson, Koelsch* consolidated two cases for review that presented the novel issue of what to do when parties who were fully eligible to retire (and whose former spouses were poised to begin receiving their share of the community interest) declined to retire and thus postponed the former spouse's rights to receipt of their share of the pension. In the two cases, the employee's pension right had matured or was about to do so, and the employee asserted an intent to keep working for many more years. *Id.* Thus, the question was "how and when a nonemployee spouse's community property interest in an employee spouse's *matured* retirement plan is to be paid when the employee wants to continue working." *Id.* (emphasis added).

¶ 20 *Koelsch* cast in sharp relief the need to balance the nonemployee spouse's potentially imminent right to receive her community share of the pension against the employee spouse's right to continue to work beyond his normal retirement date. The court held that division must be based on present value when the pension has matured and is payable. *Id.* at 183, 713 P.2d at 1241. A lump

---

6. *Judd* also rejected a claim that if pension payments are based in part upon earnings, the post-divorce years of service possess a much greater value than the pre-divorce years. The court observed that the spouses "share the same qualitative interest" in the pension rights, *id.* (citation omitted), and even if the plan considers later salary increases, that fact cannot alter the status of the community's interest. *Id.* Further, contributions in the early years of employment during the marriage, "even though based on a smaller salary, may actually be worth more than contributions during the post-separation years, due to the longer period of accumulated interest and investment income prior to the commencement of benefit payments." *Id.* The California Su-

preme Court reiterated this view in *In re Marriage of Lehman,* 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 955 P.2d 451, 458–62 (1998), which held that the wife had a community interest in enhancements to her former husband's defined benefit retirement plan because his right to benefits, which had accrued in part during marriage, also underlay the right to the enhancements. The court held that "the right to retirement benefits is a right to 'draw[ ] from [a] stream of income that … begins to flow' on retirement, as that stream is then defined." *Id.* 74 Cal.Rptr.2d 825, 955 P.2d at 454 (quoting *In re Marriage of Cornejo,* 13 Cal.4th 381, 53 Cal.Rptr.2d 81, 916 P.2d 476, 478 (1996)).

sum pay-off was preferable, *id.,* and the superior court could order the sum be paid either in full at a specified time or in installments. *Id.* at 184, 713 P.2d at 1242. If the lump sum were inequitable, the court could order monthly payments to the nonemployee "equal to his or her share of the benefit which would be received if the employee spouse were to retire." [7] *Id.* at 185, 713 P.2d at 1243.

■ ¶ 21 Because Husband's pension rights are not mature, we first conclude that the superior court erred in directing the Special Master to apply *Koelsch.* Therefore, because *Koelsch* does not apply, that case does not authorize the court to order Husband to begin making monthly payments to Wife upon his fiftieth birthday. As noted, the deferred jurisdiction method requires the court "to award the appropriate percentage of each pension payment if, as, and when it is paid out." *Johnson,* 131 Ariz. at 41, 638 P.2d at 708. Furthermore, in valuing the community share of the pension, the numerator is "the length of time worked during the marriage" and the denominator is "the total length of time worked toward earning the pension." *Id.* n. 4.

¶ 22 Second, although the Special Master calculated the cash value of Husband's benefits at age 50, Husband will not be eligible for full retirement on that date. By statute, his normal retirement date is the earliest of either age 65, age 62 and completion of ten years of credited service, or when age plus years of credited service equal eighty. A.R.S. § 38–711(27) (Supp.2006). Husband could take *early* retirement, defined as retirement after five years of credited service and attainment of age fifty, but early retirement permanently reduces the retirement benefits to which he otherwise would be entitled. A.R.S. §§ 38–711(11), –758 (2001 & Supp.2006).

¶ 23 As *Johnson* recognized, mature pension rights are unconditional rights to immediate payment. 131 Ariz. at 41 n. 2, 638 P.2d

at 708 n. 2. At age 50, Husband will not have an unconditional right to receive normal retirement benefits but instead will have a right only to reduced benefits. A.R.S. § 38–758. It is not until he reaches age 54 and has 26 years of credited service (i.e. eighty points) that he will be entitled to an unconditional retirement benefit. A.R.S. § 38–711(26) (Supp.2006). Thus, *Koelsch* is not authority for requiring Husband to choose between retiring at age 50 with a permanently reduced benefit or personally paying Wife a monthly benefit beginning at age 50 until he actually does retire.

¶ 24 Husband also challenges the DRO's characterization of his payments to Wife as non-modifiable spousal maintenance. He argues that in the settlement agreement, Wife waived all claims to spousal maintenance. It appears that the Special Master recommended that the payments be designated as spousal maintenance so as to be tax deductible by Husband in recognition of the financial impact of the "premature" payments.

■ ¶ 25 The terms of a written separation agreement that are unrelated to child custody and child support "are binding on the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties ... that the separation agreement is unfair." A.R.S. § 25–317 (2000 & Supp.2006); *see also Keller v. Keller,* 137 Ariz. 447, 448, 671 P.2d 425, 426 (App.1983). Thus, the existence of a settlement agreement did not preclude the court from making an equitable division of the marital property in light of all the evidence concerning the parties' relationship, ages, financial conditions, opportunities, and contributions to the community. *Wick v. Wick,* 107 Ariz. 382, 385, 489 P.2d 19, 22 (1971); *Sharp v. Sharp,* 179 Ariz. 205, 210, 877 P.2d 304, 309 (App. 1994).[8]

¶ 26 Here, however, the superior court did not conduct a hearing or otherwise receive

---

7. The nonemployee spouse also may share gains in the pension not due to the employee spouse's efforts but inherent to the plan, such as cost of living adjustments. *Koelsch,* 148 Ariz. at 184 n. 9, 713 P.2d at 1242 n. 9.

8. The trial court cannot, however, award spousal maintenance in lieu of an equitable division of community property. *Koelsch,* 148 Ariz. at 182, 713 P.2d at 1240.

evidence that would allow it to alter the settlement agreement; in addition, it made none of the required statutory findings to support an award of spousal maintenance. A.R.S. § 25–319 (Supp.2006). Therefore, the court had no basis on which to alter the settlement agreement and to award Wife spousal maintenance to begin ten years in the future, *Keller*, 137 Ariz. at 448, 671 P.2d at 426, even if it did so to ameliorate the economic consequences of its order.

### Survivor Benefit

¶ 27 Husband finally asserts that the superior court improperly required him to elect a joint and survivor annuity and to name Wife as the sole beneficiary.[9] He contends that the court exceeded its authority by ordering him to elect the joint and survivor annuity because the settlement agreement did not require Husband to do so and because such an election improperly would allow Wife to share in Husband's post-dissolution separate property earnings.

¶ 28 In light of our conclusion that the DRO exceeded the court's authority by ordering monthly payments in a specified amount based on the cash value of Husband's pension at age 50, we must remand this case for further proceedings. Wife has cited no authority supporting the court's order that Husband must choose a joint and survivor annuity naming Wife, which because of ASRS rules, would preclude him from providing such an annuity for a subsequent wife. The Special Master recognized many uncertainties existed regarding how long Husband, Wife, and a second wife might live and in what order they might predecease each other, as well as how long Husband's second marriage might last. The uncertainties noted by the Special Master clearly affect the wisdom and propriety of an order far in advance of actual retirement that Husband elect a particular survivor benefit. More importantly, if Wife were to receive a 50% survivor annuity, she would receive the entire survivor benefit, including portions that

had accrued after dissolution and Husband's remarriage and in which a second wife presumably would have a community interest. Because this aspect of the DRO has the effect of awarding Wife more than her share of the community interest in Husband's pension, we vacate the DRO *in toto* and remand for further proceedings in light of this decision.

### CONCLUSION

¶ 29 For the foregoing reasons, we vacate the DRO and remand for additional proceedings in the superior court. In our discretion, we deny both parties' requests for attorneys' fees on appeal.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and SUSAN A. EHRLICH, Judge.

---

9. ASRS permits only three types of survivor benefits: 100%, 66 2/3% and 50%; it also allows a retiring employee to designate only one contingent annuitant upon whose life to calculate the survivor benefit. The Special Master conceded that Wife would receive a survivor benefit based upon Husband's entire benefit rather than the benefit earned during their marriage because the ASRS plan requires the survivor benefit be calculated in that manner.