NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

MEREDITH L. BERG, *Petitioner/Appellee/Cross-Appellant*,

*v.*

JOSHUA J. BERG, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 21-0320 FC

FILED 5-12-2022

Appeal from the Superior Court in Maricopa County
No. FC2019-098387
The Honorable Marvin L. Davis, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Adam C. Rieth PLLC, Mesa
By Adam Rieth
*Counsel for Petitioner/Appellee/Cross-Appellant*

Tiffany & Bosco, PA, Phoenix
By Amy D. Sells
*Counsel for Respondent/Appellant/Cross-Appellee*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**F U R U Y A**, Judge:

¶1 The parties appeal and cross-appeal several rulings in their dissolution decree and a post-decree order. For the following reasons, we affirm the valuation of the community business and parenting time orders. We vacate and remand for the superior court to reconsider the spousal maintenance award, the property allocation and reimbursement ruling, the child support order, and the attorneys' fees ruling.

## FACTS AND PROCEDURAL HISTORY

¶2 Meredith L. Berg ("Mother") and Joshua J. Berg ("Father") were married in 2004 and have two children. Father owns an insurance agency. Mother has a master's degree and previously taught special education in Washington state. She had not worked outside the home for thirteen years before petitioning for divorce in December 2019.

¶3 The superior court issued temporary orders instituting a 5-2-2-5 parenting time schedule, awarding Mother $2,000 per month in spousal maintenance, and granting her use of the marital home. Father was ordered to make all payments related to the marital home, including the mortgage, homeowners' association dues, utilities, and insurance as well as the minimum payments on the community credit cards. The court also awarded Mother $5,000 in interim attorney's fees. On Mother's motion, the court also appointed a real estate appraiser to determine the value of the marital home, rejecting Father's contention that an appraisal was not needed until the court ordered the home sold or refinanced.

¶4 The dissolution decree awarded Mother and Father joint legal decision-making authority and equal parenting time and ordered Father to pay monthly child support of $311. In determining child support, the court attributed Mother a monthly income of $6,066.67 ($72,800.04 annually) and included Father's monthly expenses for childcare ($238) and health insurance ($636). The court also awarded Mother $2,000 a month in spousal maintenance for one year, starting June 1, 2021.

**¶5** In dividing the community's property, the court found the parties' marital community was the exclusive owner of Blue Lion Insurance, LLC, rejecting Father's claim that his business associate, Brian Roberts, owned 50% of that business. The court valued Blue Lion Insurance at $1,195,000 and ordered Father to pay half that amount ($597,500) to Mother. Mother was awarded the marital home and ordered to refinance within four months or sell the home. The court further awarded Father half the equity in the home as of the refinance or sale date. Mother's share of the community business was to be offset by Father's share of the equity in the marital home. The court declined to reimburse Father for the community debts and expenses he paid under the temporary orders. Finally, the court denied both parties' requests for attorneys' fees.

**¶6** Father timely appealed and Mother cross-appealed, but Mother also moved the superior court to alter or amend the decree under Arizona Rules of Family Law Procedure ("Rules") 82(b) and 83(a)(1), and for additional factual findings. We therefore stayed the appeal to allow the superior court to rule on Mother's motion.

**¶7** The superior court corrected the decree to state that only Father requested a week on/week off schedule and granted other relief not relevant to the appeal. The court also issued a new child support worksheet, which attributed Mother a monthly income of $4,166.67 ($50,000 annually), eliminated Father's childcare costs, and corrected the health insurance cost. Mother amended her notice of cross-appeal to appeal the post-decree order, too. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1)–(2).

## DISCUSSION

**I. Evidence Supports Finding the Community Is the Exclusive Owner of Blue Lion Insurance.**

**¶8** Father argues the superior court erred as a matter of law when it found the parties' marital community was the exclusive owner of Blue Lion Insurance because Blue Lion's operating agreement identified Roberts as a one-half member. We review allocations of community property for abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). An abuse of discretion occurs if the court "commits an error of law in the process of exercising its discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).

**¶9** Father testified he and Roberts formed Blue Lion Brokers, LLC, an insurance agency in Washington, during the marriage in 2010,

through a parent company named Soleyon. In 2013, Father left Washington and started Blue Lion Insurance in Arizona, which required him to buy out Soleyon's interest in his half of Blue Lion Brokers' policies. Roberts remained as the sole owner of Blue Lion Brokers in Washington. According to Father, despite these changes to business ownership, he and Roberts continued to share profits from the two agencies under an informal arrangement. When Roberts left Soleyon in 2017, he transferred his Blue Lion Brokers policies to Blue Lion Insurance and started to write policies for Blue Lion Insurance.

¶10　　　　The Blue Lion Insurance operating agreement shows that Father and Roberts each owned 50% of Blue Lion Insurance on January 1, 2019. Father points to the operating agreement as dispositive on the question of who owned Blue Lion. We are not persuaded. Arizona law permits a person to become a member of an LLC through the terms of the operating agreement or by vote of all existing members. A.R.S. § 29-3401(C)(1), (3). However, Arizona law did not require the superior court to unconditionally defer to language from the operating agreement when deciding who owned the business here. The operating agreement was evidence, which the court considered along with other evidence, to find the marital community owned Blue Lion in whole.

¶11　　　　That evidence included Mother's business valuation expert, David Cantor, who opined that Father did not sell half his interest in Blue Lion Insurance to Roberts, noting that Roberts did not pay anything for an ownership interest and was not issued shares of stock. Cantor testified that the only evidence of Roberts' 50% ownership was the 2019 operating agreement and 2019 tax documents. But Father testified that Roberts contributed assets to Blue Lion Insurance in exchange for his 50% membership interest. Those assets allegedly consisted of the Blue Lion Brokers policies Roberts brought with him and the additional policies he wrote for Blue Lion Insurance. However, Cantor explained that Blue Lion Insurance compensated Roberts for his efforts, so he did not necessarily contribute these assets in exchange for an ownership interest.

¶12　　　　Furthermore, Mother testified the parties had discussed divorce for many months before she filed the petition and Father made Roberts a 50% owner to reduce his own interest in Blue Lion Insurance in anticipation of the parties' divorce. To support her contention, Mother provided an April 2020 filing from the Arizona Corporation Commission showing Father as the sole principal of Blue Lion Insurance and an annual report filed with Washington Secretary of State showing Roberts did not have an interest in Blue Lion Insurance until November 2019.

¶13        The court had discretion to weigh Father's testimony together with the timing of these events and other evidence to conclude the community was the only owner of Blue Lion Insurance, despite the document's demonstrating a change in ownership occurred while the parties were contemplating divorce. "Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence." *Hurd v. Hurd,* 223 Ariz. 48, 52, ¶ 16 (App. 2009). Viewing the evidence in the light most favorable to affirming the court's decision, we discern no error. *Boncoskey,* 216 Ariz. at 451, ¶ 13.

## II.        Because the Superior Court Did Not Determine the Value of the Marital Home, It Is Unclear If the Spousal Maintenance Award Is Appropriate or If the Overall Property Allocation Is Equitable.

¶14        The superior court has broad discretion to allocate individual assets and liabilities in determining the equitable division of property, and "we will not disturb its allocation absent an abuse of discretion." *Id.* We also review the court's spousal maintenance ruling for an abuse of discretion. *Gutierrez v. Gutierrez,* 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶15        In allocating the community property, the court awarded Mother half the value of Blue Lion Insurance ($597,500). This equalization payment is to be offset by Father's 50% share of the equity in the marital home. Mother's evidence suggested the home was worth $472,000, with $159,000 in equity when she filed the petition. Father testified, generally, that the value had since increased, though he did not provide an exact valuation. But the court did not make a finding determining the value of the home or the amount of equity. Instead, it ordered Mother to refinance the loan by September 1, 2021, or sell the home. Thus, at the entry of the decree, the value of the marital home remained undetermined.

¶16        The court has broad discretion to determine the property's valuation date to achieve an equitable property allocation. *Sample v. Sample,* 152 Ariz. 239, 242 (App. 1986) ("[A] trial court must be allowed to utilize alternative valuation dates."). But failure to determine the value of the marital home until the refinance or sale date was an abuse of discretion here.

### A.        Spousal Maintenance

¶17        The spousal maintenance award of $2,000 a month was based, in part, on the fact that "Mother will have significant financial resources based on the amount of equity she will receive from Father's insurance business." The court properly considered the interest income that the

business equalization payment might generate in determining the spousal maintenance award. *See* A.R.S. § 25-319(B)(9); *Deatherage v. Deatherage,* 140 Ariz. 317, 321 (App. 1984). But because the court did not value the marital home, there was insufficient evidence to accurately estimate the net equalization payment or how much potential interest income to attribute to Mother. Thus, the record does not support the finding that Mother will have "significant financial resources" from the equalization payment, and we cannot say the spousal maintenance award was appropriate. Also unclear is when the equalization payment would generate income for Mother because the court never ordered a date certain for payment. Indeed, Father still has not paid Mother.

**¶18** Because the record lacks sufficient evidence to support the spousal maintenance award, we vacate the award and remand for reconsideration. Given this resolution, we do not address Mother's other objections regarding amount and duration of the spousal maintenance award, since the court may exercise its discretion to reconsider the amount and duration on remand.

### B. Reimbursement Claim

**¶19** The failure to determine the value of the marital home also affects Father's reimbursement claim. The temporary orders required Father to pay spousal maintenance, all expenses related to the marital home, and the minimum payment on the community credit cards. According to Father, he paid $3,500 a month for these community expenses starting in December 2019. Father argues that under *Bobrow v. Bobrow,* 241 Ariz. 592, 596, ¶ 19 (App. 2017), he is entitled to be reimbursed for these payments, and the court abused its discretion in denying his claim for reimbursement.

**¶20** Under *Bobrow,* payments voluntarily made by a spouse after service of a petition for dissolution are not presumed to be gifts to the other spouse and must be accounted for in an equitable property allocation. *Id.* at 593, 596, ¶¶ 1, 19. We reject Father's contention that *Bobrow*—and cases citing it—*require* courts to order reimbursement for all post-petition payments. Rather, courts must account for such payments. *Id.* For example, in *Hammett v. Hammett,* 247 Ariz. 556, 561, ¶ 26 (App. 2019), we remanded for the court to consider post-petition payments "to maintain community assets *as it would in any other proceeding dividing community property.*" (Emphasis added) (citing *Bobrow,* 241 Ariz. at 596, ¶ 19). And *Barron v. Barron,* 246 Ariz. 580, 591, ¶¶ 43–44 (App. 2018), *vacated in part on other grounds,* 246 Ariz. 449 (2019), denied both parties' reimbursement claims

because the "overall property allocation was equitable." These cases support the conclusion that courts must *consider* the post-petition payment of community expenses but retain discretion to account for such payments in an equitable overall property allocation.

**¶21** In denying Father's reimbursement claim, the court found Mother would not have been able to make these payments with the temporary spousal maintenance award. The court also found Father has substantially greater financial resources, and Mother needed additional financial assistance above the temporary support. According to Mother, these findings suggest the court denied the reimbursement claim because it would otherwise have had to retroactively grant additional temporary spousal maintenance. Father argues that such an inference defeats the holding in *Bobrow.* However, in *Bobrow,* 241 Ariz. at 595, ¶ 14, the husband was not obligated to pay spousal maintenance after the petition was filed in accordance with a premarital agreement, so the court could not consider the wife's need for post-petition support as it did in *Barron,* 246 Ariz. at 591, ¶ 43.

**¶22** In *Barron,* we affirmed denial of a reimbursement claim based in part on this inference. *Id.* But *Barron* did not rely exclusively on an implied and retroactive modification of temporary spousal maintenance; rather, both parties sought reimbursement for post-petition payments. *Id.* at 591, ¶ 40. The superior court denied both claims, and we concluded "the overall property allocation was equitable." *Id.* at ¶ 44. This result is consistent with *Bobrow*, which held that a reimbursement claim should be considered as part of the court's obligation to divide community property equitably. *See* A.R.S. § 25-318(A). Thus, we must look at the *overall* property allocation to determine if the denial of Father's reimbursement claim was equitable in this case.[1]

**¶23** Here, by valuing the marital home as of the date of a prospective refinance or sale instead of the date of service, the court may have reimbursed Father for his post-service mortgage payments because he will share in the increased equity in the home. Because there is no evidence of the value of the home, it is impossible to conclude that Father's share of this increased equity corresponds to the community expenses he paid.

---

[1] Father argues that unlike *Barron,* the overall property allocation was not equitable because the court erred in valuing Father's interest in the business. We do not address this argument because the court did not err in allocating the community business. *See supra* ¶ 13.

Thus, the record does not support the conclusion that denying Father's reimbursement claim was equitable under the circumstances.

**¶24**      Finally, we reject Mother's contention that Father's payments were not voluntary because the court ordered them as part of the spousal maintenance award. The expenses were separate from the temporary spousal maintenance award. Moreover, the temporary order did not limit Father's right to seek reimbursement in the final decree. *See* A.R.S. § 25-315(F)(1) (temporary orders do not prejudice a party's rights to be adjudicated at trial).

### C.      Failure to Order Due Date for Equalization Payment

**¶25**      Mother argues the lack of a due date for Father's equalization payment constitutes an abuse of discretion. Father does not oppose an order setting a date for his equalization payment but contends it must be tied to the date the marital home is refinanced or sold. As this case has shown, the lack of a due date deprived Mother of her interest in one of the community's most valuable assets and undermined the basis for the spousal maintenance award. The inequity of this delay is compounded because the court did not provide for interest on the deferred payment. "In the absence of a provision for interest on the deferred amount, [the payee spouse] is forced to make an interest-free loan to [the payor spouse]. This we deem inequitable in effectuating a division of community property." *McCune v. McCune,* 120 Ariz. 402, 404 (App. 1978).

**¶26**      We vacate that portion of the decree as to the allocation of the marital home because the court failed to make a finding determining its value. We instruct the court to order Father to pay Mother for her share of the community business by a date certain and determine what, if any, interest is appropriate. We also vacate the ruling denying Father's reimbursement claim and remand for reconsideration. On remand, the court may exercise its discretion to reallocate other property, if it determines that is necessary to achieve an equitable overall property allocation. We express no opinion on whether that is necessary and leave this determination to the court's sound discretion. Because the spousal maintenance award is dependent on the property allocation, we also vacate that award and remand for reconsideration consistent with this decision.

## III.    The Record Supports the Parenting Time Orders.

**¶27**      Mother objects to the parenting time orders on several grounds. We review the court's legal decision-making and parenting time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471,

¶ 4 (App. 2018). The court abuses its discretion "when the record is devoid of competent evidence to support the decision, or when the court commits an error of law in the process of reaching a discretionary conclusion." *Id.* In determining legal decision-making authority and parenting time, the court must consider "all factors" regarding the children's best interests and make specific findings on the record about those factors and the reasons why its decision is in the best interests of the children. *See* A.R.S. § 25-403. Failure to make the necessary findings is error. *Nold v. Nold,* 232 Ariz. 270, 273, ¶ 11 (App. 2013).

**¶28**        Mother argues the week on/week off parenting time order was not in the children's best interests because the children will then spend time at Father's office on electronic devices. She also alleged, among other things, that Father was not involved in the children's medical care or education and that he left the older child home alone on one occasion. Father presented evidence he was involved with the children, although perhaps not as much as Mother was during the marriage. Father did not think it was harmful for the children to do homework or spend time on electronic devices at his office after school. He also denied leaving the children alone except for one occasion when Mother was unavailable and left the thirteen-year-old home alone for a short time with no adverse consequences.

**¶29**        Noting the issues Mother raised and the conflicting evidence, the court nevertheless found (1) both parents have a strong, loving bond with the children; (2) both are actively involved with the children; (3) the children are well adjusted; (4) both parents and the children are mentally and physically healthy; (5) Father was more likely to allow the children frequent, meaningful contact with Mother; and (6) there was no domestic violence. *See* A.R.S. § 25-403(B). The evidence supports the conclusion that equal parenting time was in the children's best interests.

**¶30**        Mother contends the court abused its discretion by failing to state why it was in the children's best interests to adopt the week on/week off schedule instead of a 5-2-2-5 schedule. Mother did not propose the court adopt a 5-2-2-5 schedule until her post-decree motion. And she only raised it as an alternative if the court insisted on equal parenting time because the children were used to that schedule. At trial, the court decided between Mother's request that Father have alternate weekends and Father's request for equal parenting time. The findings adequately addressed this dispute. Knowing that equal parenting time was a possibility, Mother could have proposed the 5-2-2-5 schedule as an alternative at trial. The court was not

required to make additional findings on an issue Mother did not timely raise.

¶31        Next, Mother argues the court abused its discretion by not allowing the noncustodial parent to have a "couple hours" with the children on their birthdays. The parents have parenting time on the children's birthdays in alternating years. The court did not abuse its discretion, given the enmity between the parents. For the same reason, the court did not abuse its discretion when it rejected Mother's request to have the children during Father's working hours.

## IV.    The Superior Court's Child Support Award is Not Consistent with Its Findings on Spousal Maintenance or Supported by the Evidence.

¶32        We review child support awards for an abuse of discretion and accept the court's findings of fact unless clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). In ruling on Mother's post-decree motion, the court adjusted her income from $6,066.67 per month to $4,166.67 per month, finding she could earn that amount upon recertification to teach. According to Mother, she earned $3,000 a month at the time of trial and was not capable of earning $4,166.67 until she is recertified.

¶33        The court has discretion to determine a parent's earning capacity based on education, work experience, and previous earning capacity. *See Taliaferro v. Taliaferro*, 188 Ariz. 333, 337 (App. 1996). However, attributing the income Mother *will earn* once she is recertified and working full-time conflicts with the findings the court made when deciding spousal maintenance. The court found Mother was currently unable to be self-sufficient in her career and needed one-year to obtain recertification. The decree and the post-decree order recognized that Mother did not have the capacity to earn $4,166.67 until recertified. Thus, the attribution of a greater income before that time for child support purposes is not supported by the record and is contrary to the court's other findings. On remand, the court shall use Mother's pre-certification income of $3,000 a month for one year from the trial, which was the amount of time Mother estimated it would take for her to become recertified.

¶34        Mother also argues the court failed to modify the child support order after it reduced her income and adjusted Father's insurance and childcare costs. This issue is moot because the court entered a new child support worksheet with these changes, resulting in a monthly child support

obligation of $614. On January 13, 2022, the court ordered Father to pay $614 per month effective June 1, 2021.

¶35 Mother contends the court failed to allocate the cost of the children's extra-curricular activities. This issue is waived because Mother did not ask the court to allocate this expense. *See Bobrow,* 241 Ariz. at 597, ¶ 23 (stating arguments not raised below are deemed waived). Furthermore, the Arizona Child Support Guidelines ("Guidelines") do not require the court to allocate the cost of extra-curricular activities. *See* A.R.S. § 25-320, Guidelines § 9 (2018) (setting forth mandatory and discretionary expenses for determining the basic child support obligation, which do not include extra-curricular activities).

## V.     Attorneys' Fees.

Mother argues the court erred in denying her request for attorneys' fees. Because we are remanding for reconsideration of several issues, the court has the opportunity to reconsider the issue of attorneys' fees.

## ATTORNEYS' FEES ON APPEAL

¶36 Both parties request attorneys' fees on appeal under A.R.S. § 25-324. Neither party took unreasonable positions on appeal, but because there is a significant financial disparity favoring Father, we grant Mother's request for reasonable attorneys' fees and costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

## CONCLUSION

¶37 We affirm the order valuing the community business and the parenting time orders. We vacate those portions of the decree concerning the spousal maintenance award, the property allocation and reimbursement ruling, the child support order, and the attorneys' fees ruling. The superior court shall reconsider these issues on remand in a manner consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:   AA