IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

FRED BERNARD WALKER, *Petitioner/Appellee,*

*v.*

STEPHANIE CAROL WALKER, *Respondent/Appellant.*

No. 1 CA-CV 23-0036 FC
FILED 10-3-2023

Appeal from the Superior Court in Maricopa County
No. FN2021-070725
The Honorable Lori Ash, Judge *Pro Tempore*

**JURISDICTION ACCEPTED/RELIEF GRANTED**

COUNSEL

Law Office of Paula Lorona, Peoria
By Marty J. Zalevsky
*Counsel for Petitioner/Appellee*

Ellsworth Family Law PC, Mesa
By Glenn D. Halterman
*Counsel for Respondent/Appellant*

## OPINION

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

**M c M U R D I E**, Judge:

**¶1**          Stephanie Walker ("Wife") appeals from the decree dissolving her marriage to Fred Walker ("Husband"). The decree directs the preparation of a qualified domestic relations order ("QDRO") and states that "no further matters remain pending." Ariz. R. Fam. Law P. ("Rule") 78(c). But the decree did not divide potential survivor benefits of a retirement account. Because the decree did not divide the potential survivor benefits, it did not resolve all issues and thus was not appropriately certified as appealable under Rule 78(c). As a result, this court lacks appellate jurisdiction. At our discretion, however, we treat Wife's appeal as a special action and address Wife's claims.

**¶2**          On the merits, we grant relief to Wife, holding that the court erred by deviating from *Drahos/Barnett*[1] based on equity concerns about awarding Wife her separate property. We also find no evidence of community waste and vacate the court's finding.

## FACTS AND PROCEDURAL BACKGROUND

**¶3**          Husband and Wife married in 1990. In 2016, the parties bought a home and took the title in Wife's name. Husband signed a disclaimer deed acknowledging Wife's sole interest in the house. Wife made a $14,410 down payment with funds from a USAA bank account containing community funds. The parties used community income during the marriage to pay the mortgage and upkeep of the house. After the purchase, Husband made several repairs and improvements to the home.

**¶4**          Husband moved out of the house in 2021 and petitioned for dissolution a few months later. Around this time, Wife secured a home equity loan and deposited $85,243 in loan proceeds in a bank account. Less

---

[1]      *See Drahos v. Rens*, 149 Ariz. 248 (App. 1985); *Barnett v. Jedynak*, 219 Ariz. 550 (App. 2009).

than a week later, Wife wrote five checks for $9,500 each and one for $4,000 to family members for "familial debts."

¶5        Wife sold the home before the trial and paid off the home equity loan. At a temporary orders hearing, the superior court ordered Wife to account for the home sale proceeds pending trial. At the trial, the parties agreed the community had an equitable lien in some portion of the sale proceeds but disputed the amount. They stipulated that applying the *Drahos/Barnett* formula led to each spouse's equitable lien of $9,211 ($18,422 total).

¶6        At the trial, the court excluded Husband's appraiser because of untimely disclosure. The appraiser would have provided an opinion about the home's value before and after Husband's home improvements. Instead, Husband testified about his various repairs and improvements to the house, which he estimated increased its value by $50,000.

¶7        The court found that applying the *Drahos/Barnett* formula was inequitable. The court rejected Husband's estimated value increase as too high and awarded Husband $35,000 for his share of the community's equitable lien. The court also found that the checks written to Wife's family totaling $47,500 constituted marital waste and awarded Husband $23,750.

¶8        As for Wife's 401(k), the parties asked for it to be divided equitably. In the decree, the court awarded each party 50% of the community portion of Wife's 401(k), to be divided via a QDRO. The decree provided that "[t]o the extent there may be survivor benefits associated with any of the retirement accounts, the QDRO drafter shall be appointed as a Rule 72 Special Master to make recommendations to the [c]ourt as to whether the non-employee spouse should be awarded a survivor benefit." The decree included Rule 78(c) language stating that "[n]o further matters remain pending." Wife filed a notice of appeal from the decree.

## DISCUSSION

### Appellate Jurisdiction.

¶9        This court directed supplemental briefing on whether the decree's Rule 78(c) language was appropriate, given the decree's direction that (1) a QDRO be prepared and (2) the QDRO drafter recommend disposition of any survivor benefit.

¶10        For appellate jurisdiction to exist, a statute or constitutional provision must grant a substantive right to appeal, and the judgment must

comply with applicable procedural rules. *State v. Birmingham*, 96 Ariz. 109, 111-12 (1964); *Yee v. Yee*, 251 Ariz. 71, 74-75, ¶ 8 (App. 2021). Under A.R.S. § 12-2101(A)(1), this court has jurisdiction over an appeal from a final judgment in an action commenced in superior court. *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426, ¶ 4 (App. 2016). A dissolution decree generally constitutes an appealable judgment in a family court action. *See Craig v. Craig*, 227 Ariz. 105, 106, ¶ 6 (2011).

**¶11** A judgment must include language certifying it is appealable. *Brumett*, 240 Ariz. at 426, ¶ 6; *Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266-67, ¶ 11 (2022); *see also Yee*, 251 Ariz. at 75, ¶ 9 (quoting Ariz. R. Fam. Law P. 78(c)). Rules 78(b) and (c) set out the required language for a judgment in a family court action to be appealable.[2] If a decree resolves all claims and issues against all parties, the certification must recite "that no further matters remain pending and that the judgment is entered under Rule 78(c)." Ariz. R. Fam. Law P. 78(c). If the decree resolves less than all claims and issues, it can be appealable if the court expressly determines "there is no just reason for delay and recites that the judgment is entered under Rule 78(b)." Ariz. R. Fam. Law P. 78(b); *see also Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304 (App. 1991) (applying textually similar Ariz. R. Civ. P. 54(b)). This court lacks jurisdiction over an appeal from a family court judgment that resolves less than all claims and does not include Rule 78(b) language. *Camasura v. Camasura*, 238 Ariz. 179, 181–82, ¶¶ 7–8 (App. 2015).

**¶12** In a dissolution action, the superior court must divide the community property, including retirement plans such as a 401(k). A.R.S. § 25-318(A); *see also Caswell v. Caswell*, 99 Ariz. Cases Dig. 4, 9-10, ¶¶ 27-28 (App. June 20, 2023) (Morse, J. and Cruz, J., specially concurring) (questioning whether a decree that does not resolve all issues about the division of retirement benefits is appealable under Rule 78(c)). The division of a retirement plan is generally accomplished by the court establishing the percentage of a retirement plan each spouse is to receive, with a domestic

---

[2] Effective August 29, 2022, the term "final" was removed from Rules 78(b) and (c) and replaced with "appealable." Ariz. Sup. Ct. No. R-22-0005 (Aug. 29, 2022). The Rules thus do not affect the finality of any judgment, but help the court determine whether a judgment in a family court action is appealable.

relations order[3] to be entered later. Brett R. Turner, *Equitable Distribution of Property*, § 6:20 (4th ed. 2023). The QDRO directs the plan administrator to pay the non-owning spouse per the substantive division outlined in the decree. *Id.*

¶13 The question is whether the direction for entry of a QDRO leaves a substantive issue pending, which would make the Rule 78(c) finding an error. *See Baker v. Bradley*, 231 Ariz. 475, 481, ¶ 19 (App. 2013) (explaining the need to determine whether substantive or ministerial issues are pending when addressing a premature notice of appeal).

¶14 When a court specifies the division of a retirement plan between divorcing spouses and directs entry of a separate QDRO, the general rule in modern practice is that the second order, the QDRO, "is not a substantive order at all" but is instead a "procedural device[] for enforcing the terms of the underlying substantive order." Turner, *supra* § 6:20. Viewing the QDRO as a procedural device permits it to be more easily modified given future events and plan administrators' decisions "as needed to ensure fair implementation of the generally unmodifiable terms of the substantive order." *Id.* Recent Arizona caselaw reflects this understanding. *See Hodges v. Hodges*, 1 CA-CV 22-0091, 2022 WL 4102880, at *2, ¶ 7 (Ariz. App. Sept. 8, 2022) (mem. decision) (The court held that the decree gave "Wife 'immediate, present, and vested separate property interest' in her community share of Husband's retirement accounts," and that seeking to have QDROs prepared "is simply seeking compliance of the [property settlement agreement] and Decree."); *Vincent v. Shanovich*, 1 CA-CV 16-0431, 2018 WL 4585984, at *3, ¶ 10 (Ariz. App. Sept. 25, 2018) (mem. decision) (The court reversed the denial of the motion to set aside a QDRO containing a clerical mistake that did not accurately reflect the decree.).

¶15 Thus, if a dissolution decree resolves the substantive division of a retirement account, a QDRO should be treated as a special order entered after the final judgment under A.R.S. § 12-2101(A)(2) for appeal purposes. *See Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 12 (App. 2007). An appeal from the entry of a QDRO involves different issues than "those that would arise from an appeal from the underlying judgment." *Arvizu v.*

---

[3] Whether a domestic relations order must be "qualified" is a determination for the plan administrator, not the state courts. Brett R. Turner, *Equitable Distribution of Property*, §§ 6:19, 6:20 (4th ed. 2023). In this opinion, we use the term QDRO to refer to all domestic relation orders for simplicity.

*Fernandez*, 183 Ariz. 224, 226-27 (App. 1995); *see also In re Marriage of Dorman*, 198 Ariz. 298, 300, ¶ 3 (App. 2000).

**¶16**         And because a QDRO may be entered months or years after a decree, policy considerations preferring finality of the decree favor viewing a QDRO as a procedural mechanism to enforce a final decree rather than as a substantive order required to be prepared before an appeal can be taken. *See* Joshua A. Dean, *Wilson v. Wilson: The Effect of QDROs on Appealing Divorce Decrees*, 42 Akron L. Rev. 639, 673–77 (2009) (discussing the ramifications of the delay in having QDROs prepared); *see also Caswell*, 99 Ariz. Cases Dig. at 5, ¶ 1 (amended QDRO prepared 18 months after the dissolution decree); *Boncoskey*, 216 Ariz. at 449, 451, ¶¶ 2, 12 (QDRO entered three years after the dissolution decree). A dissolution decree's retirement account division resolves the claim even if a QDRO is to be prepared later. An appeal from a dissolution decree should not be delayed because a QDRO has not been prepared and filed.

**¶17**         Thus, we hold that when a dissolution decree resolves all issues and divides a retirement account by awarding a specific percentage to each party but orders a QDRO to be prepared consistent with its orders, the decree is appealable if it contains Rule 78(c) language indicating no other pending matters.

**¶18**         But here, the dissolution decree awarded 50% of the community portion of Wife's 401(k) to Husband and directed that a QDRO be prepared. But it also provided that "[t]o the extent there may be survivor benefits associated with any of the retirement accounts, the QDRO drafter shall be appointed as a Rule 72 Special Master to make recommendations to the [c]ourt as to whether the non-employee spouse should be awarded a survivor benefit." A court may appoint an attorney or other professional to recommend a division of retirement benefits or implement a division the court ordered. Ariz. R. Fam. Law P. 72.1(a). But if "the professional finds the division requires the use of discretion, the professional must submit its recommendation to the court for approval." Ariz. R. Fam. Law P. 72.1(e). Dividing property is a discretionary determination, not a ministerial matter. *See In re Marriage of Inboden,* 223 Ariz. 542, 544, ¶ 7 (App. 2010).

**¶19**         Mentioning potential survivor benefits but failing to determine whether they exist and dividing any such benefits means the decree did not resolve all claims and issues, which precludes certification under Rule 78(c). The judgment is not appealable if it includes Rule 78(c) language when potential issues or claims remain pending. *See Madrid v. Avalon Care Center-Chandler, L.L.C.,* 236 Ariz. 221, 224, ¶ 11 (App. 2014)

6

(There is no appellate jurisdiction over a judgment that includes Ariz. R. Civ. P. 54(c) language when claims remain pending.); *Caswell*, 99 Ariz. Cases Dig. at 10, ¶ 29 (Morse, J. and Cruz, J., specially concurring) (Piecemeal litigation is disfavored.).

**¶20** In Wife's supplemental memorandum addressing jurisdiction, she asserts, without citation to the record, that the 401(k) does not have a survivor benefit. Because the record does not support that there are no survivor benefits, the decree is not appealable because it does not divide a potentially listed asset and lacks Rule 78(b) language. *See Camasura*, 238 Ariz. at 181-82, ¶¶ 7-8 (A dissolution decree is not an appealable judgment because issues remained pending and there was no Rule 78(b) language.).

**¶21** We, therefore, find that including Rule 78(c) language in the decree was inaccurate because a substantive issue about property division remained unresolved, meaning this court lacks appellate jurisdiction. Even so, we exercise our discretion to treat the appeal as a special action and resolve the claims raised. *See Brionna J. v. Dep't of Child Safety*, 247 Ariz. 346, 350, ¶ 13 (App. 2019) (A court without appellate jurisdiction may "exercise . . . discretionary special action jurisdiction under appropriate circumstances, even when the parties have not requested such relief."); *see also* A.R.S. § 12-120.21(A)(4) (court of appeals has "[j]urisdiction to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to its appellate jurisdiction").

**Merits.**

**¶22** Wife challenges two rulings in the decree. First, she contends the evidence does not support the amount of the community's equitable lien on her separate property home. Second, she argues the court erred by finding she wasted community funds.

**A. The Evidence Does Not Support a Deviation from the *Drahos/Barnett* Formula.**

**¶23** We review the superior court's allocation of property for an abuse of discretion. *Saba v. Khoury*, 253 Ariz. 587, 590, ¶ 7 (2022). "The determination of the amount of the community interest in separate property resulting in an equitable lien is a mixed question of fact and law . . . so we defer to the [superior] court's factual findings but review legal conclusions de novo." *Id.* (citations omitted).

¶24        Wife was entitled to the sale proceeds from her separate property home. *See* A.R.S. § 25-213(A) (An increase in value of a spouse's separate property is that spouse's separate property.). But the marital community is entitled to an equitable reimbursement for its contributions to that separate property home. *Saba*, 253 Ariz. at 592, ¶ 15. Our supreme court held that the *Drahos/Barnett* formula is a useful, consistent starting point, but courts may depart from that formula when warranted. *Id.* at 592, ¶ 16. An example of when to "modify the value generated by the *Drahos/Barnett* formula" is when community funds or efforts are used to improve the home. *Id.* at 592, ¶ 16, n.4. *Saba* noted that "fair return may be more accurately calculated by appraising the increase in the value of the home immediately before and after the improvements." *Id.* Thus, *Saba* allows courts to consider other options to reimburse the community for its contributions to separate property.

¶25        The superior court found this case warranted a deviation from "an equal division of property" because, after thirty years of marriage, Husband had no other significant separate property and awarding Wife "all the funds from the sale of the residence" would lead to a windfall to her. But the home (and the proceeds from its sale) was Wife's separate property, not community property subject to equitable division under § 25-318(A). *See Saba*, 253 Ariz. at 592–93, ¶ 17. Even so, the community has a right to an equitable reimbursement for contributions to one spouse's separate property. And despite framing its analysis of the equitable lien as a "division of community property," it appears the superior court, in substance, found the application of the *Drahos/Barnett* formula inequitable.

¶26        The court found Husband's efforts increased the home's value and awarded him $35,000 for his share of the community lien. Although the court had the discretion to conclude that Husband's efforts justified deviating from the *Drahos/Barnett* formula, *Saba*, 253 Ariz. at 592, ¶ 16, n.4, the record does not support a $35,000 award.

¶27        Husband testified to a list of general home maintenance and improvements he performed. He provided photos of his projects but no appraisals. The superior court found that Husband's $50,000 estimate was too high. But an award of $35,000 for Husband's share means the total community lien would be $70,000. Even if we account for the $18,422 of community funds contributed—as the parties stipulated—the difference of $51,578 represents the increased value from Husband's efforts. This amount contradicts the court's conclusion that Husband's $50,000 estimate was too high.

¶28 Husband argues the court's finding that the $50,000 increase in value was too high was dicta, and this court can also consider market appreciation as a basis to affirm the ruling. But Husband presented no evidence of market appreciation. Moreover, Husband's suggested approach would require us to ignore the court's express finding and presume that the increase in value was higher than Husband's estimate. We cannot ignore the court's finding. Because the court rejected Husband's estimation, the record does not support the award of $35,000 as Husband's share of the community's equitable lien on Wife's separate property. We vacate the order awarding Husband $35,000 as his share of the equitable lien.

¶29 Wife argues that because there was no other competent evidence showing how much Husband's efforts increased the home's value, the only option is to remand and apply the stipulated *Drahos/Barnett* formula. We agree. Husband had the burden of showing the amount of the increase in value. *Hefner v. Hefner*, 248 Ariz. 54, 60, ¶ 17 (App. 2019) (A spouse claiming he increased the value of the other spouse's separate property through community labor and funds has the burden of showing the increased amount.). The court rejected Husband's evidence, and he did not appeal that ruling. As a result, the only evidence of the community's contribution was the stipulated *Drahos/Barnett* formula. Thus, we vacate the award of $35,000 to Husband for his share of the community's equitable lien and remand with instructions to apply the stipulated formula.

**B.      The Superior Court Erred by Finding Wife Transmuted Her Separate Property by Depositing it in a Commingled Bank Account, so the Waste Finding Is Based on an Erroneous Legal Conclusion.**

¶30 We review the superior court's characterization of separate or community property *de novo*. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). The court accepted Husband's position that the home equity loan proceeds became community property because Wife deposited them into an account containing community funds. This was error.

¶31 "The mere fact that the property was commingled does not cause it to lose its separate identity, as long as the separate property can still be identified." *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986); *accord Cooper v. Cooper*, 130 Ariz. 257, 259 (1981); *Noble v. Noble*, 26 Ariz. App. 89, 95 (1976) (Commingling does not cause transmutation "so long as the funds remain traceable."); *O'Hair v. O'Hair*, 109 Ariz. 236, 239 (1973) (When a spouse's separate funds are deposited in a joint bank account, the marital relationship alone does not presume a gift.). Thus, the finding of waste is

based on an erroneous premise. If the funds remained traceable, the commingling did not transmute them. If not transmuted, the funds remained Wife's separate property and thus could not support a marital waste finding. *See* A.R.S. § 25-318(C) (permitting consideration of waste as to "community joint tenancy and other property held in common").

¶32        Wife showed that the bank account had a balance of $10,889 when she deposited the loan proceeds. Husband does not dispute that the loan proceeds were Wife's separate funds. Wife wrote five identifiable checks less than a week after depositing her separate funds. Thus, the funds were traceable and did not lose their identity. *See Cupp*, 152 Ariz. at 164 (Separate funds remained traceable where spouse bought "easily identifiable assets" with commingled separate funds "within a very short time after receiving those funds.").

¶33        Husband argues that because the checks repaid community debts and expenses, Wife gifted the funds to the community, rendering them commingled and untraceable. But a spouse's use of separate funds to pay a community debt does not transmute the balance of the separate funds into community property. *See Battiste v. Battiste*, 135 Ariz. 470, 473 (App. 1983). But contrary to Husband's position, the superior court found that Wife's payments to her family were not community debts, and using community funds for this purpose was waste. The loan proceeds were traceable and remained Wife's separate property, meaning she could spend them on non-community expenses without consequence. *See Blaine v. Blaine*, 63 Ariz. 100, 113 (1945) (There is a presumption that separate expenses are paid out of the separate funds in a commingled account.).

¶34        The loan proceeds did not lose their separate property identity just because they were placed in a commingled account. The funds were traceable and thus remained Wife's separate property. The court erred by finding Wife committed waste by paying her family $47,500. We vacate the order awarding Husband $23,750.

## ATTORNEY'S FEES

¶35        The parties request an award of attorney's fees and costs on appeal under A.R.S. § 25-324. In exercising our discretion, we decline to award fees. As the successful party, Wife is entitled to costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

**CONCLUSION**

**¶36**      We reverse the award of $35,000 to Husband as his share of the community's equitable lien on Wife's home and remand with instructions to apply the stipulated *Drahos/Barnett* formula. We vacate the finding of waste and the corresponding award to Husband. The decree is otherwise affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA